UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN PATTERSON and WOBURN FIRE FIGHTERS ASSOCIATION, LOCAL 971, I.A.F.F.,<br>Plaintiffs<br><br>V.<br><br>PAUL TORTOLANO, CHIEF OF THE CITY OF WOBURN FIRE DEPARTMENT and CITY OF WOBURN,<br>Defendants | CIVIL ACTION NO. 04-CV-12190 JLT |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**MOTION FOR INJUNCTIVE RELIEF**

NOW COME, the defendants in this matter in opposition to the plaintiffs' Motion for Preliminary and Injunctive Relief and ask the Court to deny this motion. For the reasons set forth below and in the Affidavits and exhibits attached hereto, the defendants ask that this motion be denied because:

1.  The plaintiff, Stephen Patterson, knowingly and deliberately failed to report for duty and failed to notify the defendant City of Woburn (the "City") that he had been cleared to return to light duty. Instead, Mr. Patterson continued to collect benefits pursuant to G.L. c. 41, §111F when he was not entitled to do so. In light of his obligation to return to work and to notify the City of his medical status, Mr. Patterson has forfeited his claim for Section 111F benefits as a matter of law, and, as such, is not substantially likely to prevail on his underlying claim and is not entitled to injunctive relief;

2.  Contrary to his argument that he was not provided adequate notice and opportunity to respond prior to the cessation of his G.L. c. 41, §111F benefits, the plaintiff, like the plaintiff in Mard v. Amherst, 350 F.3d 184 (1st Cir. 2003), had ample notice and opportunity to present his position as to why he should not be returned to light duty and, as such, is not substantially likely to prevail on his claim that the defendants have violated G.L. c. 41, §111F or deprived him of his constitutionally protected property interests without due process;

3.  The plaintiff's knowing conduct in failing to return to duty or otherwise notify the City of Woburn of his doctor's certification that he was fit to do so constituted job abandonment as set forth in G.L. c. 31, §38 and, as such, he is not substantially likely to prevail on his underlying claim and injunctive relief should not be granted;

4.  The defendants have not breached any obligation to pay Mr. Patterson for any legitimate medical treatment properly authorized by G.L. c. 41, §100 and therefore the plaintiff is not substantially likely to prevail on his underlying claim and injunctive relief should not be granted;

5.  Any damage suffered by the plaintiff as a result of his knowing failure to return to duty consists of readily calculable money damages at law and, as such, he is not likely to irreparably harmed and is not entitled to injunctive relief;

6.  Given the plaintiff's knowing and potentially fraudulent conduct in failing to return to duty and failing to notify the City of Woburn that he was able to return to duty, the plaintiff is not entitled to equitable relief;

7.  Furthermore, the plaintiff's demand for benefits or guaranteed return to duty on a continuing basis pending resolution of arbitration, the plaintiff's actions pursuant to G.L. c. 31, §48 or this court action would (a) grant the plaintiff greater rights than he would be entitled to

were his claims upheld in full; and (b) place a tremendous burden on every public employer by creating precedent that any public employee would be entitled to ongoing benefits and salary until they had exhausted every legal and administrative challenge to termination.

For these reasons, as more fully set out below, the defendants, City of Woburn and Paul Tortolano, Chief of the Woburn Fire Department, ask this Court to deny the plaintiff's Motion for Preliminary and Permanent Injunctive Relief.

## STATEMENT OF FACTS

Stephen Patterson has been a full-time permanent firefighter for the City since 1980 and served in reserve or provisional capacities since 1975. The City of Woburn employs approximately sixty-seven (67) firefighters deployed over five (5) stations throughout the City. Affidavit of Paul Tortolano at ¶2, attached hereto as Exhibit 1. The Department also employs three (3) additional non-firefighting staff, including fire prevention staff. Id.

The Department has entered into a Collective Bargaining Agreement with the firefighters of the City of Woburn. Tortolano Aff. at 3. A copy of that Agreement is attached hereto as Exhibit 3. As part of the City's Collective Bargaining Agreement, the City has agreed to provide light duty positions for individuals who have been injured on or off duty but are able to perform modified duty responsibilities. Tortolano Aff. at 4. Article 3 of the Collective Bargaining Agreement addresses "Limited Duty Policy and Procedure" and provides in pertinent part:

- Any employee who has been absent from duty on injury leave, within the meaning of [G.L.] c.41, s.111F, may be assigned by the City to limited duty… Article 3.2(a).

- Limited duty shall cease when the Fire Fighter is either capable of returning to full fire fighting duty status or is retired. Limited duty status shall continue during an appeal of adverse medical and/or Retirement Board Ruling… Article 3.2(d).

- Disputes regarding the interpretation or application of this program shall be subject to the grievance and arbitration procedures contained in the Collective Bargaining Agreement between the parties. Article 3.3.

Paul Tortolano is the Chief of the City's Fire Department. Tortolano Aff. at 1. It is his practice and is contractually required that when an employee needs to be reassigned either to or from light duty or to a new assignment that involves a change of station or assignment to a new group, that he will provide the Department with written notice of such transfer within any required time period. Tortolano Aff. at 5. However, when a firefighter takes vacation, sick leave or other leave and will be returning to a light duty assignment, Chief Tortolano does not, and is not required to, send that fire fighter a new notice requiring him or her to return to their prior duty. Id.

Mr. Patterson has taken a number of injury-on-duty leaves beginning in 1983. Tortolano Aff. at 6. For at least all times relevant to this request for injunctive relief, Mr. Patterson has been paid for all G.L. c. 41, §111F benefits to which he is entitled and has received compensation for all medical expenses incurred in connection with injuries sustained while on duty. Affidavit of Jan Robbins Cox, attached as Exhibit 2, at ¶3. Prior to the most recent leave at issue in this matter, Mr. Patterson was on leave from April 2003 through July 2004. Tortolano Aff. at 7. During that leave, the City of Woburn sent Mr. Patterson to an independent medical examination with Dr. Robert Pennell. Cox Aff. at 22. A copy of Dr. Pennell's report is attached as Exhibit 12. Dr. Pennell's review of Mr. Patterson's medical history revealed that Mr. Patterson was complaining of numerous symptoms that were not likely to be related to his on duty injuries. Id. Dr. Pennell stated that: "[t]here is also the suggestion that Mr. Patterson may have been engaging in some inappropriate pain behavior..." and that Mr. Patterson suffered from "[n]on-symptomatic, mild degenerative changes" in certain lumbar discs and "[m]ultiple somatic complaints without clear organic cause." Id.

Despite Dr. Pennell's finding that there was "no causal connection" between Mr. Patterson's complaints and his on duty injuries and Dr. Pennell's finding that Mr. Patterson could return to full duty without restrictions, Mr. Patterson refused to return to duty until July 2004 after being cleared to return to duty by his physician in June 2004. Cox Aff. at 23; Tortolano Aff. at 7; a copy of Mr. Patterson's physician's June 2004 note is attached as Exhibit 4.

This note stated that Mr. Patterson would be eligible to return to light duty performing data entry beginning in July 2004. See Exhibit 4. Chief Tortolano notified Mr. Patterson of his light duty assignment by letter dated July 7, 2004. Tortolano Aff. at 7; Exhibit 5. In that letter, Chief Tortolano states: "If you have any questions, please speak to me in person." Exhibit 5. On July 13, 2004, Chief Tortolano sent Mr. Patterson a more detailed memorandum outline describing the details of the positions. Tortolano Aff. at 7l; a copy of this memorandum is attached as Exhibit 6.

In the July 13, 2004 memorandum, Chief Tortolano specifically advised Mr. Patterson of his obligation to keep the City informed of his prognosis. See Exhibit 6. The letter states:

> Also, during your next visit to your attending physician please ask him to provide us with an up-to-date prognosis as it relates to his anticipated time from for your return to full duty. Any questions you may have should be directed through Inspector Sweeney, Captain Mills or me, as necessitated by the subject matter.

The City from time to time employs a nurse case manager to provide assistance in the medical management of City employees who are out on extended leave in their return to work, either on regular duty or light duty or otherwise. Cox Aff. at 4. The nurse case manager will generally attend medical appointments with employees, make suggestions about treatment, assist

physicians or medical personnel in reviewing the employee's job duties and conferring about possible light duty assignments or accommodations. Cox Aff. at 5.

The nurse case manager is an independent contractor and does not generally perform her work on City property. Cox Aff. at 6. The nurse case manager will frequently prepare progress reports, summaries or other case analyses based upon her interactions with employees or their healthcare providers. Id.

In the case of Mr. Patterson, the City employed Linda Casale-Luz to act as nurse case manager for his injury on duty leave since at least 2001. Cox Aff. at 7. Ms. Casale-Luz's practice has been to provide the City's Human Resources Director, Jan Robbins Cox, with written case status material along with her bill on a roughly monthly basis. Id. As a result of this practice, several weeks can elapse between her attendance at a medical exam and the City's receipt of her written reports. Id. Although Ms. Casale-Luz and Ms. Cox do confer by telephone occasionally, such communications do not occur regularly or on all cases. Id.

Mr. Patterson went on vacation from his light duty position beginning August 2, 2004. Cox Aff. at 8. While he was on vacation on or about August 6, 2004, he began submitting requests for sick leave. Id. Later, on or about August 16, 2004, the City received a request that he be placed on full injured status retroactive to the beginning of his vacation, August 2, 2004. Id. That request for retroactivity was denied, and he was placed on injured status effective August 18, 2004, the first business day after receiving the request. Id.

The City learned in late August 2004 that Mr. Patterson had a follow-up appointment with his physician on or about September 9, 2004, since his physician had been on vacation at the time of the August 16, 2004 request for leave. Cox Aff. at 9. On August 16, 2004, Mr. Patterson had talked to a physician assistant in Dr. Pedlow's office who, in the doctor's absence,

arranged for an MRI to be conducted on Mr. Patterson. Id. Mr. Patterson was informed that he would have to wait for information on the MRI and for the return of the doctor to the office as the doctor was on vacation through the end of the month. Id. Mr. Patterson had demanded the physician assistant provide him with the August 16, 2004 note despite his physician's absence. Id.

On or about September 10, 2004, Ms. Cox had a telephone conversation with Ms. Casale-Luz primarily during which Ms. Casale-Luz informed Ms. Cox that she had attended an examination of Mr. Patterson on September 9, 2004 and that at that time, Mr. Patterson had been informed that he could return to his light duty position and was provided with a note to that effect. Cox Aff. at 10; a copy of this note is attached as Exhibit 7 (although it was not received by the City much later than the September 10, 2004 date on the note).

As of September 15, 2004, Mr. Patterson still had not provided a copy of this note to the City. Cox Aff. at 11. Ms. Casale-Luz had similarly not been provided a copy of the note. Id. At the request of Ms. Cox, Ms. Casale-Luz contacted Mr. Patterson's physician's office to obtain a copy of the note. Cox Aff. at 12. The doctor's office could not provide an actual copy of the note given to Mr. Patterson as he had been given the only copy. Id.

Ms. Cox resumed her investigation of this matter in late September after taking leave to attend to an urgent family matter. Id. Upon her return, Ms. Cox learned that Mr. Patterson had not reported back to duty and had not informed the City that he had been cleared by his doctor to do so. Cox Aff. at 13.

Given his failure to report to duty for three weeks, Mr. Patterson had abandoned his position pursuant to Massachusetts General Laws, Chapter 31, §38. Tortolano Aff. at 11. On September 30, 2004, the City sent Mr. Patterson a notice that his position had been abandoned

and describing his right to claim a hearing to seek restoration to his position. Id.; a copy of that notice is attached as Exhibit 8 Mr. Patterson submitted a request for such a hearing on October 5, 2004 and the hearing was conducted on October 18, 2004. Tortolano Aff. at 12; Exhibit 9.

Mr. Patterson gave sworn testimony during that hearing, requiring him to give truthful and complete testimony under the pains and penalties of perjury. Cox Aff. at 14; Tortolano Aff. at 15. During that hearing, Ms. Cox questioned Mr. Patterson in the presence of Chief Tortolano, in his capacity as Appointing Authority, City Solicitor Thomas Lawton and Mr. Patterson's counsel. Id.

During this hearing, Mr. Patterson gave a number of answers under oath that he later retracted or substantially modified. Cox Aff. at 16. For example, he testified that he had seen his doctor in mid-August when he had been given a note that he should be placed on injured on duty leave. Id. When asked specifically if he had talked to his physician, Dr. Pedlow, Mr. Patterson confirmed that he had. Id. After being reminded that Dr. Pedlow had been on vacation at the time, Mr. Patterson changed his testimony and stated that he had not seen or talked to Dr. Pedlow but may have actually talked to a physician's assistant. Id.

During further questioning, Mr. Patterson confirmed that he had received a note from his physician dated September 10, 2004 indicating that he was able to return to his light duty position. Cox Aff. at 17. When asked if he had provided this note to the City, Mr. Patterson initially indicated that he had provided a copy of this note to the City. Cox Aff. at 18. When questioned further regarding to whom he provided the note, Mr. Patterson changed his testimony and said that he thought a note had been provided to the City by his doctor's office. Id. When informed that he had the only copy of the note, Mr. Patterson then said he thought that a note had been provided to the City via the case manager, Ms. Casale-Luz. Id.

Mr. Patterson was given an opportunity to present his position on this matter and was accompanied by counsel at all times. Cox Aff. at 19. The Appointing Authority has not rendered a decision yet in connection with the abandonment hearing held on October 18, 2004. Cox Aff. at 20; Tortolano Aff. at 15. A decision is expected shortly (although no set guideline for return of such decisions is established by statute). Id.

The City of Woburn ceased Mr. Patterson's salary payments as of September 30, 2004. Tortolano Aff. at 13. On October 14, 2004, the City received a grievance submitted on behalf of Mr. Patterson by his Union concerning his salary being stopped. Id.; a copy of this grievance is attached as Exhibit 10. The City has responded to this grievance and denied it. A copy of the City's response is attached as Exhibit 11.

## ARGUMENT

The plaintiff is not entitled to the injunctive relief sought because he is not substantially likely to succeed on the merits of his case, he cannot demonstrate the potential of irreparable harm if not granted equitable relief, the balance of interests in the case weigh against granting relief to a party that has likely engaged in willful misconduct and there is a serious and negative impact on public policy if Mr. Patterson's motion is granted. Patterson's conduct appears to be a knowing and intentional effort to remain on leave despite being cleared to return to light duty. In light of his long experience both as a firefighter and as a recipient of injured-on-duty benefits, Mr. Patterson's arguments that he has been wrongfully denied his benefits and should not have been terminated for abandonment are, under the most charitable reading, disingenuous. For the reasons set forth herein, the defendants request the plaintiffs' Motion for Preliminary and Permanent Injunctive Relief be denied.

### A.   *Standard of Review for Injunctive Relief.*

The standard of review for granting injunctive relief is well established. "A party who seeks a preliminary injunction must show: (1) that he has a substantial likelihood of success on the merits; (2) that he faces a significant potential for irreparable harm in the absence of immediate relief; (3) that the ebb and flow of possible hardships are in favorable juxtaposition (i.e., that the issuance of the injunction will not impose more of a burden on the nonmovant than its absence will impose on the movant); and (4) that the granting of prompt injunctive relief will promote (or, at least, not denigrate) the public interest. Nieves-Marquez v. Commonwealth of Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003); McGuire v. Reilly, 260 F.3d 36, 42 (1st Cir. 2001); Ross-Simon's of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996); Narragansett Ind. Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991).

Contrariwise, a preliminary injunction should not issue where, as here, the plaintiff cannot show that he has a substantial chance of success on the merits, any harm sustained by the plaintiff can be readily calculated and compensated by money damages, and where the balance of hardships and any reasonable assessment of the public interest weighs against the issuance of the requested injunction. Additionally, courts are appropriately reluctant to grant injunctions where the mandatory relief requested would give the movant all or more relief that he could have obtained after a successful trial on the merits. Automatic Radio Mfg. Co. v. Ford Motor Co., 272 F.Supp. 744, 749 (D. Mass. 1967) aff'd 390 F.2d 113, cert. denied 391 U.S. 914 (1968); Assoc. Builders and Contractors of Massachusetts/Rhode Island v. Massachusetts Water Resources Authority, 935 F.2d 345, 350 (1st Cir. 1991), rev'd on other grounds, 507 U.S. 218 (1993).

### B.  *Mr. Patterson's Failure to Return to Duty or Report His Medical Condition Constitutes a Forfeiture of His Rights to Benefits Under G.L. c. 41, §111F.*

The plaintiff incorrectly argues that he is entitled to ongoing benefits under Section 111F because he was injured in the line of duty and (i) his incapacity still exists and (ii) he did not receive a new notice of his light duty assignment after he went on vacation and then sick leave in August and September 2004. Neither the law nor the facts support the plaintiff's contention and as such, there is no substantial likelihood that he will prevail on the merits of his claim and his motion for injunctive relief must be denied.

In his Motion, Mr. Patterson cites Section 111F for the premise that "he is entitled to be paid pursuant to §111F until his 'incapacity no longer exists.'" Motion at 21. Mr. Patterson then concedes that a fire fighter "may be ineligible for §111F benefits if he is capable of performing some fire fighter duties..." Id. citing to Newton Branch Massachusetts Police Assoc. v. City of Newton, 396 Mass. 186 (1985). The plaintiff, however, seriously misapplies the Newton decision to the facts of this case.

The Newton court was deciding whether, after bargaining to impasse with its police union, the City of Newton could implement a mandatory light duty provision. Newton, 396 Mass. at 189-190. In responding to the union's challenges to Newton's proposed light duty policy, the Court specifically rejected the premise that a firefighter is entitled to Section 111F "until his 'incapacity no longer exists.'" Id. at 191. As Mr. Patterson does note, the Newton court then goes on to find that an officer or firefighter assigned to light duty "is required to perform that duty or forfeit his right to paid accidental disability leave under M.G.L. c. 41, §111F." Id. at 192.

Contrary to Mr. Patterson's assertion, however, the Newton case does not stand for the proposition that a firefighter must receive a new notice of light duty assignment every time he

goes out on leave. Similarly, there is no obligation in the Collective Bargaining Agreement's light duty provisions that requires such a notice. To the contrary, the light duty article clearly states that: "Limited duty shall cease when the Fire Fighter is either capable of returning to full fire fighting duty status or is retired." Exhibit 3 at p. 6, Article 3.2(d). An assignment to limited duty does not cease because an employee takes vacation, or sick leave or even additional injured on duty leave.

When he was given this light duty assignment, Mr. Patterson was specifically informed of two additional obligations. In Chief Tortolano's memorandum of July 13, 2004, Mr. Patterson was specifically instructed to advise the City of his physician's assessment of his prognosis. Exhibit 6. He was also specifically placed on notice that if he had any questions, he should contact his senior officers, specifically Inspector Sweeney, Captain Miller or Chief Tortolano. Id. This instruction was repeated in the Chief's earlier memo of July 7, 2004. Exhibit 5 ("If you have any questions, please speak to me in person.").

After receiving his doctor's note on or about September 10, 2004, Mr. Patterson did not return to duty. He did not call Chief Tortolano, or Inspector Sweeney or Captain Miller. Contrary to statements made in his Motion, Mr. Patterson never provided a copy of his doctor's note to the City. Mr. Patterson has, in fact, recanted under oath earlier statements that he personally provided the note to the City. Cox Aff. at 18. Instead, Mr. Patterson stayed at home for weeks, did no work for the City of Woburn and collected Section 111F benefits to which he was not entitled.

As Mr. Patterson was plainly able to return to his light duty assignment and failed to do so, he has forfeited his Section 111F benefits. Newton, 396 Mass. at 192. He is also not

substantially likely to prevail on the merits of Section 111F claims and, therefore, injunctive relief is inappropriate ant the plaintiff's motion should be denied.

### C. In Addition to His Forfeiture of Section 111F Benefits, Mr. Patterson Had Ample Notice and Opportunity to be Heard Prior to His Own Physician's Decision that He Should Return to Light Duty.

To the extent Mr. Patterson's benefits are not extinguished by his failure to comply with his light duty obligations, he had ample notice and opportunity to be heard on the question of whether he should have been returned to light duty. Under the First Circuit's recent decision in the case of Mard v. Amherst, 350 F.3d 184 (1st Cir. 2003), a medical exam by an agreed upon physician constitutes adequate opportunity to be heard in connection with a cessation of Section 111F benefits. In this case, Mr. Patterson was being seen by his own physician (presumably acceptable to him) and was well aware that the physician's report could result in his return to light duty (as it had less than two months earlier). This, coupled with the availability of substantial "post-termination" procedures for review of Mr. Patterson's leave status, fully satisfies all constitutional process due to Mr. Patterson.

In Mard, the plaintiff was an Amherst firefighter injured in the line of duty in 2000. Id. at 185. Pursuant to a collective bargaining agreement, Amherst required Mard to attend a medical examination which resulted in differing reports from the Town's physician and Mard's physician. Id. at 186. Mard was then ordered to attend an independent medical examination with a physician whom she claimed failed to review her medical records. Id. at 186-187. The medical examiner found that Ms. Mard was able to work in a "moderate duty capacity." Id. at 187.

The Mard court found that the requirements of procedural due process were satisfied by Mard's medical examination:

> The Due Process Clause requires "an opportunity to be heard . . . at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552 (1965). In general, the state must provide "some kind of hearing" before depriving an individual of a protected property interest. Zinermon v. Burch, 494 U.S. 113, 127 (1990). This hearing need not be elaborate. Rather, where more comprehensive post-termination procedures are available, the pre-termination hearing need only provide "an initial check against mistaken decisions." Loudermill, 470 U.S. at 546 [Cleveland Bd. of Educ. V. Loudermill, 570 U.S. 532, 546 (1985)].

Mard, 350 F.3d at 192. The First Circuit went on to find that Ms. Mard's medical examination "may serve as such an 'initial check' and, coupled with adequate post-deprivation procedures, provide a meaningful opportunity to be heard." Id.

As with Ms. Mard, Mr. Patterson was aware that he was being examined for purposes of determining his eligibility for Section 111F benefits. Mr. Patterson was seeking medical authorization for a finding of full incapacity. He was aware of the importance and possible consequence of such an examination, as he had been placed on light duty as a result of a similar examination approximately three months earlier. He was also aware that he was subject to light duty assignment pursuant to the City's Collective Bargaining Agreement because he had served light duty in July 2004. Chief Tortolano's July 13, 2004 memorandum clearly required Mr. Patterson to obtain and provide medical updates regarding his prognosis for determining when he would be eligible to return to duty. Finally, also like Ms. Mard, Mr. Patterson has adequate post-decision remedies available to him which he is currently engaged in exercising.

The only significant difference between Mr. Patterson and Ms. Mard is that she was engaged in an independent medical examination and Mr. Patterson was seeing his personal physician to determine his Section 111F status. In the Mard case, Ms. Mard alleged that she was not given an opportunity to be heard because the independent medical examiner refused review her medical records. Id. at 187. The Mard Court found that her opportunity to be heard was

adequate despite such allegations. By contrast, Mr. Patterson cannot claim that he had less of an opportunity to be heard than Ms. Mard when he was seeing his own physician.[1]

For these reasons, Mr. Patterson cannot claim that he was deprived of due process in connection with his Section 111F benefits. He is therefore not substantially likely to prevail on the merits of his claims and his demand for injunctive relief must be denied.

### D. *Mr. Patterson's Failure to Report for Duty Constituted an Abandonment of His Position Pursuant to State Law.*

Mr. Patterson's conduct in failing to return to duty or otherwise inform the City of his medical status constitutes a voluntary abandonment of his position pursuant to state law. G.L. c. 31, §38 clearly stating that a public employee who has failed to return for duty without authorization may then be sent a letter indicating that he has been considered to have permanently and voluntarily abandoned his position. The statue requires that the employee be notified of this abandonment and be given an opportunity to be heard as why he should be "restored" to his position. Id.[2]

Mr. Patterson's conduct resulted in a forfeiture of his position by operation of state law. The language of the statute itself makes it clear that the Legislature did not contemplate a "Pre-termination" proceeding in cases of abandonment. As an initial matter, the statute itself refers to a hearing to determine if the employee should be "restored" to his position—not to any process to determine if the employee has in fact voluntarily abandoned his position. By contrast, other sections in the same chapter specifically require hearings prior to decisions such as whether to implement a disciplinary suspension of five or more days. See G.L. c. 31, §§41, 41A.

---

[1] It bears noting that Mr. Patterson and his Union have not in any way challenged Dr. Pedlow's finding that Mr. Patterson was fit to return to at least light duty.

[2] Although the merits of Mr. Patterson's explanation for collecting three weeks of Section 111F benefits without providing notice of his physician's findings is suspect on his face, whether this explanation is satisfactory will be determined by Appointing Authority based upon Mr. Patterson's testimony at his October 18, 2004 hearing.

Like Section 38, there are other Massachusetts statutes limiting a public employee's access to pre-determination notice and opportunity to be heard that have been upheld in the past. For example, notice and hearing is not required pursuant to G.L. c. 71, §42, which allows for the termination of a tenured teacher without hearing if the decision is based on decreased school enrollment. Boston Teachers Local 66 v. School Comm. of Boston, 386 Mass. 197 (1982); see also Martin v. School Comm. of Natick, 393 Mass. 430, 435 (1984).

This analysis is substantially different from the case of Hudson v. Chicago, 374 F.3d 554, 559-561 (7th Cir. 2004). In Hudson, the City of Chicago sought to apply its own job abandonment policy, not a policy imposed by the state. Id. Similarly, the absent without permission policy Chicago was seeking to enforce was for a very short period (four days of unexcused leave, as opposed to the almost three weeks taken by Mr. Patterson). Additionally, the leave policy did not contemplate any specific appeal period, contrasting with Section 38 which specifically allows for an appeal to the personnel administrator of the Human Resources Division.

Mr. Patterson's case is also readily distinguishable from Cantoni v. Northampton, U.S. Dist. Ct. for Mass., Civ. Action No. 99-30278-FHF (attached to the plaintiffs' Motion as Exhibit K). In Cantoni, the Court refused to uphold an alleged abandonment where the employee had never been given any light duty assignment after being found medically qualified to perform light duty. Mr. Patterson, by contrast, was aware of his assignment, had no legitimate basis for claiming it had changed and nonetheless failed to return to duty or notify the City of his condition. Mr. Patterson has also distinguished himself by his failure to notify the City of his physician's note that he was able to return to duty.

For these reasons, Mr. Patterson is not substantially likely to prevail on his underlying claim and his motion for injunctive relief should, therefore, be denied.

### E.  *Mr. Patterson's Claim that He Had Been Denied Benefits Pursuant to G.L. c. 41, § 100 Is Incorrect.*

Firefighters injured in the line of duty are entitled to reimbursement for medical expenses related to their injuries under G.L. c. 41, §100 ("Section 100"). Mr. Patterson's contention that he has been denied benefits under Section 100 is incorrect.

Section 100 benefits are not terminated by an employee's abandonment of his position, forfeiture of Section 111F benefits or other change in employment. The City has not denied any authorized request for Section 100 benefits and all of Mr. Patterson's appropriately submitted medical bills have been paid. Reference to "authorized payments" in the City's letter of September 30, 2004 are meant to refer to salary replacement benefits and not to Section 100 benefits.

As such, Mr. Patterson is not substantially likely to prevail on his underlying claims and his motion for injunctive relief should be denied.

### F.  *Balancing the Equities in this Matter, Mr. Patterson is not Entitled to the Injunctive Relief Sought.*

Based on the facts in this matter, there is no basis to determine that Mr. Patterson will suffer irreparable harm or that the equities and public interest warrant an award of injunctive relief. To the contrary, Mr. Patterson's own conduct tips the scales against an award in his favor. Furthermore, Mr. Patterson has sought injunctive relief in excess of what he would be entitled to were he to fully prevail on this claim and be awarded all due process rights allegedly denied him.

As an initial matter, Mr. Patterson has not alleged sufficient facts to support a claim that he has been irreparably harmed by the alleged conduct of the defendants. As noted above,

Mr. Patterson has incorrectly stated that he has been denied Section 100 benefits. Mr. Patterson has also failed to identify whether he could support himself by other means (including savings).[3] His contention that he is unemployable due to his physical condition does not address his ability to perform jobs comparable to light duty assignments for which he is fit such as data entry or, possibly, dispatching.

Mr. Patterson also fails to take into account the fact that his claims for additional due process has set up a defined and limited period of potential loss. Even assuming Mr. Patterson prevails on his claim that he should have been granted a hearing prior to the City issuing its September 30, 2004 letter to him, Mr. Patterson did have a full hearing on October 18, 2004. If Mr. Patterson prevails in his claims, the longest period in which he was denied process in this matter was from September 30, 2004 through October 18, 2004—and the longest period he can be found to have been without pay would be from September 30, 2004 through the date the City issues its decision on the G.L. c. 31, §38 post-abandonment hearing held on October 18, 2004 (a period likely to be no longer than the period Mr. Patterson received unauthorized 111F benefits). Mr. Patterson, however, has asked for continuation of his benefits not until he received a hearing on this matter but until the completion of the arbitration process. This would grant him more relief than he would have been entitled to had the City provided all the process he claims he was due.

Slip opinions provided by the plaintiffs to support Mr. Patterson's claim that he has suffered irreparable harm differ from Mr. Patterson's situation in several important regards. Those slip opinions deal with cases where the <u>employer's</u> physician had found the employee

---

[3] Mr. Patterson has also failed to allege what impact his failure to pay support payments to his wife (from whom he is separated) would have on her—particularly as those payments are limited to $200 per month and continuation of health insurance.

entitled to Section 111F benefits, as opposed to here where Mr. Patterson was cleared to return to light duty. Furthermore, none of the cases cited by the plaintiff authorize equitable relief where the plaintiff had knowledge of his return to work but failed to either report to work or inform his superior officers of his condition.

Finally, grant of injunctive relief in this matter would reinforce a dangerous trend suggesting that all public employees should be carried on the City's payroll until they have exhausted all appellate processes. This is a substantial burden on the public employer and would constitute a new right to compensation not contemplated by constitution, statute or collective bargaining agreement. When compared to the potential loss of pay for a finite period of time by Mr. Patterson, public interest weighs against granting the requested injunctive relief.

## CONCLUSION

For the foregoing reasons, the defendants request that the plaintiffs' Motion for Preliminary and Permanent Injunctive Relief be denied.

Respectfully submitted,

PAUL TORTOLANO, CHIEF OF THE CITY OF
WOBURN FIRE DEPARTMENT and CITY OF
WOBURN

By their counsel,

_____
Michael D. Badger, Esq.
BBO #633915
Mirick, O'Connell, DeMallie & Lougee, LLP
1700 West Park Drive
Worcester, MA 01608-1477
Dated: October 25, 2004           Phone: (508) 791-8500
Fax:   (508) 791-8502

## CERTIFICATE OF SERVICE

I, Michael D. Badger, hereby certify that I have this day served a copy of the foregoing document, by overnight courier to Terence Coles, Esq., Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C., 18 Tremont Street, Suite 500, Boston, MA 02108.

_____
Michael D. Badger, Esq.

Dated: October 25, 2004