**EXHIBIT 1**

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN PATTERSON and WOBURN<br>FIRE FIGHTERS ASSOCIATION,<br>LOCAL 971, I.A.F.F.,<br>    Plaintiffs<br><br>       V.<br><br>PAUL TORTOLANO, CHIEF OF THE CITY<br>OF WOBURN FIRE DEPARTMENT and<br>CITY OF WOBURN,<br>    Defendants | CIVIL ACTION NO. 04-CV-12190 JLT |

## AFFIDAVIT OF PAUL TORTOLANO

I, Paul Tortolano, being duly sworn, do hereby depose and state:

1.　　I am the Chief of the City of Woburn Fire Department. I have held this position since January 1998.

2.　　The City of Woburn employs approximately sixty-seven (67) firefighters deployed over five (5) stations throughout the City. The Department also employs three (3) additional non-firefighting staff, including fire prevention staff.

3.　　The City has entered into a Collective Bargaining Agreement with the firefighters of the City of Woburn. A copy of that Agreement is attached to the defendants' Opposition to the Plaintiffs' Motion for Preliminary and Permanent Injunctive Relief (Defendants' Opposition) as Exhibit 3.

4.　　As part of the City's Collective Bargaining Agreement, the City has agreed to provide light duty positions for individuals who have been injured on or off duty but are able to

perform modified duty responsibilities. These light duty positions include dispatcher duties and data entry duties.

5.    It is my practice and is contractually required that when an employee needs to be reassigned either to or from light duty or to a new assignment that involves a change of station or assignment to a new group, that I will provide the Department with written notice of such transfer within any required time period. However, when a firefighter takes vacation, sick leave or other leave and will be returning to his prior duty, it is not my practice to send that officer a new notice requiring them to return to their prior duty.

6.    Mr. Patterson has required frequent leave for an injury on duty he sustained in 1983. He has also required injury on duty leave for other injuries he sustained some years later.

7.    Most recently, Mr. Patterson has complained of an aggravation to his preexisting injuries and was placed on leave beginning in April 2003. He remained on leave until July of 2004. In June of 2004, our records indicate that the City received notice that he was able to return to a light duty position as of July 2004. A copy of that notice is attached to the Defendants' Opposition as Exhibit 4. I notified Mr. Patterson that he would be assigned to a light duty position upon his return to duty in July 2004. A copy of that notice is attached to the Defendants' Opposition as Exhibit 5. I sent a description of Mr. Patterson's assignment to him on July 13, 2004. A copy of that description is attached to the Defendants' Opposition as Exhibit 6.

8.    Mr. Patterson returned to duty in July 2004 and worked as a data entry specialist for several weeks. He then took vacation leave beginning August 2, 2004. Several days later, Mr. Patterson began taking sick leave. On or about August 16, 2004, Mr. Patterson submitted a request that his time off since August 2, 2004 be considered injury-on-duty leave. This request

for retroactive leave was rejected, as it was not confirmed by medical documentation, but Mr. Patterson was placed on injury-on-duty status as of August 18, 2004.

9.      I had no further communication from Firefighter Patterson and did not see him again until October 18, 2004.

10.     Mr. Patterson at no point informed me or, to the best of my knowledge, any of my staff or other administrators in the City of Woburn that he had been cleared by his physician to return to light duty as of September 10, 2004.

11.     When I learned that Mr. Patterson had been cleared for light duty and had failed to return to work as of September 30, 2004, I notified Mr. Patterson in writing that he was considered to have abandoned his position pursuant to Massachusetts General Laws, Chapter 31, §38. A copy of the September 30, 2004 letter of notification to Mr. Patterson is attached to the Defendants' Opposition as Exhibit 8.

12.     On or about October 7, 2004, I received a request from Mr. Patterson for a hearing pursuant to G.L. c. 31, §38. A copy of this request is attached to the Defendants' Opposition as Exhibit 9.

13.     The City of Woburn ceased Mr. Patterson's salary payments as of September 23, 2004. On October 7, 2004, I received a grievance submitted on behalf of Mr. Patterson by his Union concerning his salary being stopped. A copy of this grievance is attached to the Defendants' Opposition as Exhibit 10.

14.     The City has responded to this grievance and denied it. A copy of the City's response is attached to the Defendants' Opposition as Exhibit 11.

15. On October 18, 2004, in my capacity as Appointing Authority for the Fire Department, I attended the hearing held at Mr. Patterson's request pursuant to G.L. c. 31, §38. The Appointing Authority has not rendered its decision at this time.

Signed under the pains and penalties of perjury, this 25th day of October, 2004.

PAUL TORTOLANO, CHIEF OF CITY OF
WOBURN FIRE DEPARTMENT

**EXHIBIT 2**

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN PATTERSON and WOBURN<br>FIRE FIGHTERS ASSOCIATION,<br>LOCAL 971, I.A.F.F.,<br>    Plaintiffs<br><br>    V.<br><br>PAUL TORTOLANO, CHIEF OF THE CITY<br>OF WOBURN FIRE DEPARTMENT and<br>CITY OF WOBURN,<br>    Defendants | CIVIL ACTION NO. 04-CV-12190 JLT |

## **AFFIDAVIT OF JAN ROBBINS COX**

I, Jan Robbins Cox, being duly sworn, do hereby depose and state:

1.     I am employed as Human Resources Director for the City of Woburn. I have held this position since December 1997. In that capacity, I provide human resources administration and support services to all City departments and agencies, including the Fire Department.

2.     Stephen Patterson has been a full-time permanent firefighter for the City since 1980 and served in reserve or provisional capacities since 1975.

3.     Mr. Patterson has taken a number of injury-on-duty leaves beginning in 1983. Since I began in this position, it is my understanding that Mr. Patterson has been paid for all G.L. c. 41, §111F benefits to which he is entitled and has received compensation for all medical expenses incurred in connection with injuries sustained while on duty.

4.     The City of Woburn from time to time employs a nurse case manager to provide assistance in the medical management of City employees who are out on extended leave in their return to work, either on regular duty or light duty or otherwise.

5.      The nurse case manager will generally attend medical appointments with employees, make suggestions about treatment, assist physicians or medical personnel in reviewing the employee's job duties and conferring about possible light duty assignments or accommodations.

6.      The nurse case manager is an independent contractor and does not generally perform her work on City property. The nurse case manager will frequently prepare progress reports, summaries or other case analyses based upon her interactions with employees or their healthcare providers.

7.      In the case of Mr. Patterson, the City employed Linda Casale-Luz to act as nurse case manager for his injury on duty leave since at least 2001. Ms. Casale-Luz's practice has been to provide me with written case status material along with her bill on a roughly monthly basis. As a result of this practice, several weeks can elapse between her attendance at a medical exam and my receipt of her written reports. Although Ms. Casale-Luz and I do confer by telephone occasionally, such communications do not occur regularly or on all cases.

8.      Mr. Patterson went on vacation from his light duty position beginning August 2, 2004. While he was on vacation on or about August 6, 2004, he began submitting requests for sick leave. Later, on or about August 16, 2004, the City received a request from Mr. Patterson that he be placed on full injured status retroactive to the beginning of his vacation, August 2, 2004. That request for retroactivity was denied, and he was placed on injured status effective August 18, 2004, the next business day after the request.

9.      I learned in late August 2004 that Mr. Patterson had a follow-up appointment with his physician on September 9, 2004, since his physician had been on vacation at the time of the August 16, 2004 note. I also learned that on August 16, 2004, Mr. Patterson had talked to a

physician assistant in Dr. Pedlow's office who, in the doctor's absence, arranged for an MRI to be conducted on Mr. Patterson. I learned at that time that Mr. Patterson was informed that he would have to wait for information on the MRI and for the return of the doctor to the office as the doctor was on vacation through the end of the month. I was also informed that Mr. Patterson had demanded the physician assistant provide him with the August 16, 2004 request for leave despite his physician's absence and that he had requested the physician's assistant include a retroactive date of impairment of August 2, 2004.

10.    On or about September 10, 2004, I had a telephone conversation with Ms. Casale-Luz during which I also inquired as to whether Mr. Patterson's physician had seen him yet. Ms. Casale-Luz informed me that she had attended an examination of Mr. Patterson on or about September 9, 2004 and that at that time, Mr. Patterson had been informed that he could return to his light duty position and was provided with a note to that effect. See Exhibit 7 attached to the Defendants' Opposition (not received by me until October 18, 2004).

11.    I spoke with Fire Department Chief Paul Tortolano on or about September 15, 2004, and asked whether Mr. Patterson had provided a copy of this doctor's note. The Chief said he had not. I then called Ms. Casale-Luz and inquired if she had a copy of that note. She indicated she did not.

12.    I asked Ms. Casale-Luz to communicate with the doctor's office to see if they could provide her with a copy of Mr. Patterson's doctor's note. As I was then out of the office for approximately a week and a half on urgent family business, Ms. Casale-Luz was unable to report to me until late September.

13.    I learned that Mr. Patterson had not reported back to duty and had not informed the City that he had been cleared by his doctor to do so.

14.     As Mr. Patterson had abandoned his position pursuant to Massachusetts General Laws, Chapter 31, §38, he was sent a notice of a hearing pursuant to that section. That hearing was conducted on October 18, 2004.

15.     I attended that hearing and Thomas Lawton, Solicitor for the City of Woburn, swore in Mr. Patterson, requiring him to give truthful and complete testimony under the pains and penalties of perjury. During that hearing, I questioned Mr. Patterson in the presence of Chief Tortolano, who acted as Hearing Officer for the Appointing Authority.

16.     During this hearing, Mr. Patterson gave a number of answers under oath that he later retracted or substantially modified. For example, he testified that he had talked to his doctor in mid-August when he had been given a note that he should be placed on injured on duty leave. I asked him specifically if he had talked to his physician, Dr. Pedlow, and Mr. Patterson confirmed that he had. After I reminded Mr. Patterson that Dr. Pedlow had been on vacation at the time, Mr. Patterson changed his testimony and stated that he had not seen or talked to Dr. Pedlow but may have actually talked to a physician's assistant.

17.     During further questioning, I asked Mr. Patterson if he had received a note clearing him to return to light duty work on September 9, 2004. Mr. Patterson confirmed that he had received such a note from his physician.

18.     I asked Mr. Patterson if he had provided this note to the City. Mr. Patterson's counsel had indicated that Mr. Patterson had provided a copy of this note to the City. When questioned regarding to whom he provided the note, Mr. Patterson changed his testimony and said that he thought a note had been provided to the City by his doctor's office. When I informed Mr. Patterson that he had the only copy of the note, he then said he thought that a note had been provided to the City via the case manager, Ms. Casale-Luz.

19.    Mr. Patterson was given an opportunity to present his position on this matter and was accompanied by counsel at all times.

20.    The Appointing Authority has not rendered a decision yet in connection with the abandonment hearing held on October 18, 2004. A decision is expected shortly (although no set guideline for return of such decisions is established by statute).

21.    The City is continuing to pay Mr. Patterson's medical expenses relating to authorized and appropriate treatments for his on duty injuries.

22.    Prior to his most recent leave, Mr. Patterson was on injury-on-duty status from April 2003 through July 2004. During that leave, the City of Woburn sent Mr. Patterson to an independent medical examination with Dr. Robert Pennell. A copy of Dr. Pennell's report is attached to the Defendants' Opposition as Exhibit 12. Dr. Pennell's review of Mr. Patterson's medical history revealed that Mr. Patterson was complaining of numerous symptoms that were not likely to be related to his on duty injuries. Dr. Pennell stated that: "[t]here is also the suggestion that Mr. Patterson may have been engaging in some inappropriate pain behavior…" and that Mr. Patterson suffered from "[n]on-symptomatic, mild degenerative changes" in certain lumbar discs and "[m]ultiple somatic complaints without clear organic cause."

23.    Despite Dr. Pennell's finding that there was "no causal connection" between Mr. Patterson's complaints and his on duty injuries and Dr. Pennell's finding that Mr. Patterson could return to full duty without restrictions, Mr. Patterson refused to return to duty until July 2004.

Signed under the pains and penalties of perjury, this 25th day of October, 2004.

_J̶e̶a̶n̶ R̶o̶b̶b̶i̶n̶s̶ C̶o̶x̶_

JAN ROBBINS COX
DIRECTOR OF HUMAN RESOURCES,
CITY OF WOBURN