UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STEPHEN PATTERSON and WOBURN FIRE FIGHTERS ASSOCIATION, LOCAL 971, I.A.F.F.,     Plaintiffs, <br><br> v. <br><br> PAUL TORTOLANO, CHIEF OF THE CITY OF WOBURN FIRE DEPARTMENT and CITY OF WOBURN,     Defendants. | Civil Action No: 04-CV-12190 JLT |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT ON LIABILITY**

## I.    INTRODUCTION

Plaintiff, Stephen Patterson, is a firefighter for the Defendant City of Woburn ("City").

Because of a severe back injury which he suffered in the line of duty, Mr. Patterson went on

injury leave on or about August 18, 2004.  Mr. Patterson brought an initial motion for

preliminary injunction against Defendants after his employment and injury leave benefits were

terminated on or about September 25, 2004 without providing Mr. Patterson notice and

opportunity to be heard pursuant to the .  At the hearing on Plaintiffs' motion for preliminary

injunction, this Court suggested that the parties attempt to settle the matter.  Although the parties

were unable to settle the matter, Defendants did apparently see the writing on the wall and

reinstated Mr. Patterson back to his position as a firefighter, effective November 1, 2004.  Mr.

Patterson's reinstatement effectively ended the irreparable harm caused by Defendants unlawful

conduct.  Accordingly, Plaintiffs withdrew their motion for preliminary injunction.

As a result of Mr. Patterson's reinstatement, the only remaining liability legal issue to be

addressed in this matter is Defendants' deprivation of Mr. Patterson's right to due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution, 42 U.S.C. §1983.[1] As set forth below, Plaintiffs motion should be granted because, based on the undisputed material facts, Defendants failed to provide Mr. Patterson with a due process notice and hearing prior to terminating his employment and statutory injury leave benefits under M.G.L. c. §111F on September 25, 2004. As a result of Defendants' unlawful conduct, Mr. Patterson was denied his compensation and/or injury leave benefits from September 25, 2004 until his reinstatement on November 1, 2004. Accordingly, the Court should grant Plaintiffs' motion for summary judgment on liability.

## II.    FACTS

Plaintiff Stephen Patterson has been employed by the Defendant City of Woburn ("City") since 1975, when he began work as a full-time provisional fire fighter. He became a permanent reserve fire fighter for the City in September of 1979. He was appointed as a full-time permanent fire fighter in February of 1980. He has been assigned to the position of Fire Alarm Supervisor since 1993. Exhibit ("Ex.") A, Affidavit of Stephen Patterson, dated October 15, 2004 ("Patterson Aff."), ¶1.

2.    Mr. Patterson is a member of the Woburn Fire Fighters Association, Local 971, IAFF (the "Union"), which represents all of the fire fighters employed by the City.

3.    In 1983, in the course of performing his duties as a fire fighter for the City,[2] Mr. Patterson injured his back and was out of work for approximately two weeks in 1983. During

---

[1]    As a result of Defendants' reinstatement of Mr. Patterson and Defendants' agreement to arbitrate Plaintiffs' grievance concerning his termination and his denial of injury leave and/or light duty, Plaintiffs hereby dismiss Counts I, II and IV of their Complaint. The instant motion for summary judgment addresses the remaining count, Count III, brought pursuant to the 42 U.S.C. §1983 and 42 U.S.C. §1988.
[2] Patterson injured his back while on a medical call when he was transporting an injured person out of a building to an ambulance. Ex. A, Patterson Aff., ¶4.

this period Patterson received injury leave benefits from the City pursuant to M.G.L. c. 41, §111F. Ex. A, Patterson Aff., ¶4.

4.    Since 1983, Mr. Patterson has had recurring back problems stemming from his work related injury and he has had to go on a number of injury leaves pursuant to Section 111F. He has also undergone extensive physical therapy and surgery in an attempt to resolve this back pain. Most recently, he underwent surgery in early 2004. See, Ex. A, Patterson Aff., ¶¶5-9

5.    The Union and the City are parties to a collective bargaining agreement which provides in Article 3, Section 3 for a "Limited Duty Policy and Procedure." Ex. B, Affidavit of David Peary, dated October 15, 2004 ("Peary Aff."), ¶¶3-4, Ex. 1. This Limited Duty Policy and Procedure provides a procedure through which employees on §111F injury leave and unable to perform full fire fighting duty, can return to work under limited duty. Under this procedure, the City has the right to assign firefighter to the appropriate limited duty tasks and work schedule. Thus, Article 3, Section 3 of the parties' Agreement provides:

### Section -3- Limited Duty Policy and Procedure

The intent of this policy is to provide a procedure and mechanism for employees who, although unable to perform full fire fighting duty, are capable of performing meaningful duties within the Woburn Fire Department; assigning them appropriate tasks and work schedules; . . . The purpose is to give the City the right to assign employees who have been injured on duty . . .

(e)    Limited duty shall consist of tasks assigned by the City, including but not limited to: dispatching, fire prevention inspections, education, training and/or administrative tasks. All assigned tasks shall be within the physical capabilities of the employee.

See, Ex. B, Peary Aff., ¶4, Ex. 1.

6.    The historic practice within the City's Fire Department has been that a fire fighter on injury leave does not return to work on limited duty until, pursuant to the collective bargaining agreement, the City assigns the fire fighter to a limited duty position and notifies the

fire fighter of the assignment and the date of his/her return to work. See, Ex. B, Peary Aff., ¶5; Ex. C, Affidavit of David Fuller, dated October 15, 2004 ("Fuller Affidavit"), ¶3.

7.    On a number of occasions in the past, the limited duty procedure set forth above was followed when Mr. Patterson has been cleared by his treating or examining physician to return to work on limited duty. On each of these occasions, the physician's record clearing Mr. Patterson for light duty would be sent to the City and, thereafter, Mr. Patterson would receive either a telephone call or a letter from the City's Fire Chief indicating when he should return to limited duty and his specific assignment. For example, Mr. Patterson suffered a work-related injury to his femur and knee in 2000, when he fell and sustained a fractured femur and knee injury. As a result he was unable to work for a period of time and received injury leave benefits under M.G.L. c. 41, §111F. Ex. A, Patterson Aff., ¶¶6-7. Mr. Patterson was cleared to return to work after a medical examination by Dr. William Patterson in September, 2000. Thereafter, Chief Tortolano corresponded directly with the medical examiner, Dr. William B. Patterson. See, Ex. D, Supplemental Affidavit of Stephen Patterson, dated October 27, 2004 ("Supp. Patterson Aff."), ¶9, Ex. 2. Chief Tortolano's letter requested Dr. Patterson's medical opinion as to what limited duty positions Mr. Patterson was capable of performing. *Id.* Thereafter, on September 27, 2000, he received a letter from Defendant Fire Chief Paul Tortolano notifying him of the date he should return to work (October 2, 2000) and his assignment. Ex. A, Patterson Aff., ¶¶7, Ex. 1.

8.    Patterson has undergone various treatments for his back injury for a number of years. Ex. A, Patterson Aff., ¶5. In or around April of 2003, Patterson's back pain increased to the point where he was unable to work. Thereafter, he remained on 111F leave from April, 2003 until July, 2004. During this time, Patterson continued to undergo various treatments to try to

4

alleviate his back pain. However, in approximately September of 2003, Patterson's treating physician, Dr. Frank X. Pedlow, a specialist at the Massachusetts General Hospital's Department of Orthopaedic Surgery, determined that Mr. Patterson had reached an endpoint in noninvasive treatments and recommended surgery. On February 10, 2004, Dr. Pedlow performed a fusion and decompression at L5-S1. Thereafter, Patterson began physical therapy. Ex. A, Patterson Aff., ¶¶8-9.

9.    On June 7, 2004, Dr. Pedlow determined that Mr. Patterson could return to work in July, 2004 to a "Limited Duty – Data Entry Position." Ex. A, Patterson Aff., ¶10, Ex. 2. Present at this visit was Linda Casale-Luz, a nurse manager employed by the City, who relayed this information to the City's Human Resources Department Director, Jan Cox in the form of a "Progress Report." *Id.,*, Ex. 3. Ms. Casale-Luz's recommendation was to "[c]ontact Mr. Patterson periodically to monitor progress." *Id.* This letter was copied to the Woburn Fire Department. *Id.*

10.    On July 7, 2004, one month after Patterson's doctor had submitted the note allowing Patterson to return to work, Defendant Fire Chief Paul Tortolano ("Chief Tortolano") sent Patterson a letter stating that "[a]ccording to your case manager your doctor has given his approval for your return to work on limited duty. You are to report to duty as dispatcher at Station #3 on Group #2 on July 12, 2004." Ex. A, Patterson Aff., ¶11, Ex. 4.

11.    Thereafter, Mr. Patterson spoke to Chief Tortolano and explained that Dr. Pedlow had only cleared him to return to limited duty in a "data entry position" and, therefore, he could not perform the dispatcher position the Chief had assigned him to. Chief Tortolano agreed and told Mr. Patterson to report to work on July 12, 2004 and perform only data entry work. Ex. A, Patterson Aff., ¶12.

12.    At no time before or after June 7, 2004 did Chief Tortolano, Ms. Cox, or any other representative of the City, suggest that it was Mr. Patterson's responsibility to send in medical information or contact the City to arrange for his assignment to light duty. See, Ex. D, Supp. Patterson Aff., ¶8.

13.    On July 13, 2004, Chief Tortolano posted a notice setting forth Mr. Patterson's date of return to work on a limited duty basis and his specific job responsibility on data entry only. Chief Tortolano sent a copy of this notice to the Captains' office, the fire stations and the Union. Ex. B, Peary Aff., ¶7, Ex. 2.

14.    As set forth above, the procedure that was followed whereby the Fire Chief notified Mr. Patterson of his return to work and his assignment before he returned to work on limited duty in July, 2004, has been the historic practice within the Department.

15.    On July 12, 2004, Patterson returned to work in the position of data entry and worked in that position until early August, 2004 when he began experiencing increased back pain and was unable to work. Ex. A, Patterson Aff., ¶13.

16.    Mr. Patterson's most recent injury leave occurred in August, 2004, when he once again began having back pain. He initially used his some of his accrued vacation to try and rest his back and resolve the injury. However, the back pain persisted and, as a result, he went on injury leave beginning on August 18, 2004. Ex. A, Patterson Aff., ¶13. During the period from August 18, 2004 to approximately September 25, 2004, Mr. Patterson received injury leave benefits from the City pursuant to M.G.L. c. 41, §111F. Ex. A, Patterson Aff., ¶¶14-15.

17.    On September 10, 2004, Patterson was examined by his treating physician, Dr. Pedlow, who determined that Patterson was able to return to work on that date with the following restrictions: "Light duty – no lifting/bending/prolonged sitting or standing." Present at this

meeting was Linda Casale-Luz, the City's nurse manager, who relayed this information to the City's Human Resource Manager, Jan Cox. Ex. A, Patterson Aff., ¶16, Ex. 5; Ex. E, Affidavit of Jan Cox, dated October 25, 2004 ("Cox Aff."), ¶10.

18.     Ms. Cox then spoke to Defendant Fire Chief Tortolano on September 15, 2004 and informed him that Mr. Patterson had been cleared for light duty. Ex. E, Cox Aff., ¶11.

19.     Based on the historic practice within the Fire Department, Patterson's own prior experience in returning from injury leave to limited duty, and the provisions within the Collective Bargaining Agreement, after the September 10, 2004 note from Dr. Pedlow was submitted to the City and the Chief Tortolano, Patterson waited for the Chief to contact him as to when and where he was to return to work and his specific job assignment. Ex. A, Patterson Aff., ¶17.

20.     However, Patterson was not contacted by anyone from the City after September 10, 2004 as to when he should return to work or what limited duty assignment he would receive. Ex. A, Patterson Aff., ¶19.

21.     Rather, on September 30, 2004, without any prior notice from Chief Tortolano, Ms. Cox, or any other City representative, Patterson received a letter from Chief Tortolano alleging that Patterson's absence from work "since September 10, 2004 is unauthorized based on your continued failure to report to work and your failure to advise me of any legitimate reason for your absence. Accordingly, the Department will not authorize any payments to be made during this period of unauthorized absence." Chief Tortolano's letter also maintained that "in accordance with M.G.L. c. 31, §38, please be advised that you are considered to have permanently and voluntarily separated yourself from employment with the City of Woburn Fire Department based on your failure to report for duty in excess of fourteen (14) days without

authorization from the Appointing Authority." Finally, Chief Tortolano's letter stated that "[y]ou may, within ten days after the mailing date of this letter, request a hearing before the Appointing Authority to determine if there is any basis for your restoration of employment with the City of Woburn Fire Department or if there is a basis for your being granted a leave of absence. Otherwise you will be considered permanently and voluntarily separated from employment with the Woburn Fire Department." Ex. A, Patterson Aff., ¶20, Ex. 6.

22.    Contrary to Chief Tortolano's letter, Mr. Patterson did not believe he was on an unauthorized absence from work as of September 10, 2004. Rather, because no one, including Chief Tortolano has contacted him to provide him with his date of return and job assignment, he understood that he was continuing on injury leave. Ex. A, Patterson Aff., ¶21.

23.    On October 5, 2004, upon the advice of the Union's President, David Peary, Mr. Patterson to request a hearing on this matter to contest the Chief's claim that he had been on an unauthorized absence since September 10, 2004. Ex. B, Peary Aff., ¶¶8-10; Ex. A, Patterson Aff., ¶22, Ex. 7.

24.    On or about October 5, 2004, the President of the Union, David Peary, telephoned Chief Tortolano's office and spoke to the Chief's secretary. Mr. Peary stated that he wanted to meet with the Chief to determine if there was a misunderstanding as to Mr. Patterson's injury on leave benefits and/or his limited duty assignment and to confirm that Mr. Patterson would continue to receive his pay while the requested hearing was pending. Based on past experience, the Union believed that Mr. Patterson would be provided a hearing before his pay was terminated. The Chief's secretary told Mr. Peary that she would give Mr. Peary's message to the Chief. Chief Tortolano never returned Mr. Peary's telephone call. Ex. B, Peary Aff., ¶¶11-12.

8

25.     However, despite the fact that Patterson had requested a hearing, and Mr. Patterson's and the Union's belief that the City would comply with the law and not discontinue his employment and injury leave benefits until he received a pre-termination hearing, on October 7, 2004, Mr. Patterson discovered that the City had discontinued his pay as of September 25, 2004. That same day, Mr. Patterson informed Union President Peary that he had not received a paycheck. Ex. A, Patterson Aff., ¶23; Ex. B, Peary Aff., ¶13.

26.     On October 13, 2004, the Union's counsel, Terence Coles, Esquire, spoke to the City's counsel, Nicholas Anastasopoulos, Esquire, and explained, *inter alia*, that Mr. Patterson was not on an unauthorized leave of absence, that his §111F benefits were continuing, and that Mr. Patterson should be entitled to a due process hearing before his benefits or pay were terminated. Mr. Coles then sent Mr. Anastasopoulos an e-mail explaining the Union's position and relevant documents. Ex. F, Affidavit of Terence Coles, Esquire, dated December 13, 2004 (", ¶¶2-5, Ex. 1.

27.     On October 14, 2004, the City's counsel wrote back to Mr. Coles and stated (1) that Mr. Patterson would not be provided with a hearing prior to the termination of his employment and/or Section 111F benefits; and (2) that Mr. Patterson's hearing was scheduled for October 18, 2004. Ex. F, Coles Aff., ¶6, Ex. 2.

28.     Mr. Patterson's first hearing before the City was held on October 18, 2004, *three weeks after* his employment and injury leave benefits were terminated. Ex. F, Coles Aff., ¶7.

29.     On October 28, 2004, the parties attended a hearing on Plaintiffs' motion for preliminary injunction. Upon the suggestion of Judge Joseph L. Tauro, the parties began settlement discussions in the Court's chambers. Ex. F, Coles Aff., ¶8.

30.    On October 29, 2004, the City decided to reverse its decision to terminate Mr. Patterson's employment and reinstated him Mr. Patterson to limited duty as a firefighter with the City's Fire Department, effective November 1, 2004.  Ex. F, Coles Aff., ¶9.

31.    As a result of Mr. Patterson's reinstatement, he is no longer suffering irreparable harm as a result of Defendants' unlawful conduct, obviating the need for a preliminary injunction while this case goes forward.  Accordingly, on November 9, 2004, Plaintiffs' counsel sent a letter to Zita Lovett, Court Clerk to the Honorable Judge Joseph L. Tauro, withdrawing Plaintiffs' motion for preliminary injunction.  See, Ex. F, Coles Aff., ¶10, Ex. 3.

32.    Section 2-32 the City's Municipal Code guarantees a permanent employee both *pretermination notice and hearing before termination for "inexcusable absence without leave."* See, Ex. F, Coles Aff., ¶11, Ex. 4.  Thus, Section 2-32 provides that an employee "may be demoted or dismissed for just cause, provided the following procedures are adhered to:

> 1.    The employee shall be notified in writing of the contemplated sanction and the reasons for such action five (5) working days prior to the effective date of such action and a copy of said notice shall be filed with the personnel director.
> 2.    The employee shall be granted a hearing before the mayor within five (5) working days after notification of dismissal or demotion and the mayor will render a decision five (5) working days thereafter.

Further, the section goes on to define "just cause" to include "9.  Inexcusable absence without leave." *Id.*

## ARGUMENT

**A.   PLAINTIFF WAS ENTITLED TO NOTICE AND HEARING PRIOR TO THE TERMINATION OF HIS EMPLOYMENT PURSUANT TO HIS PROPERTY INTEREST UNDER THE FOURTEENTH AMENDMENT.**

Mr. Patterson was on injury leave under M.G.L. c. 41, §111F and an employee of the City's Fire Department until September 25, 2004, when Defendants summarily terminated his benefits and his employment with the City's Fire Department. Pursuant to the well settled principles of constitutional law, Mr. Patterson had a property interest in both his injury leave benefits and his continued employment with the Fire Department and, accordingly, he was entitled to a due process pretermination hearing. Here, it is undisputed that no such notice and pretermination hearing was provided. Mr. Patterson did not receive a hearing until October 18, 2004, *twenty-three days after his termination.* The only issue apparently contested by the City is whether Mr. Patterson actually had a property interest in his continued employment. However, as set forth below, Mr. Patterson's property interest is firmly established by the City's Municipal Code, the Commonwealth's Civil Service statute, and the collective bargaining agreement between the City and Mr. Patterson's Union.

Under settled principles of constitutional law, once a legislature has conferred a property interest upon an individual by statute that property interest may not be subsequently terminated without appropriate procedural safeguards. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 (1985). *See also, Kercado-Melendez v. Aponte-Roque,* 829 F.2d 255, 262 (1ˢᵗ Cir. 1987).

Due process requires a pretermination hearing when a person having a property interest in his employment is terminated. This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. *Loudermill, supra, Board of Regents v. Roth,* 408 U.S. at 569-570; *Perry v.*

11

*Sindermann*, 408 U.S. 593, 599 (1972); *Fontana v. Commissioner of Metropolitan Dist. Com'n*
34 Mass.App.Ct. 63, 606 N.E.2d 1343 (due process requires a pretermination hearing when a
person having a property interest in his employment is terminated, citing *Loudermill)*.

Plaintiff's property interest in his continued employment stems from three sources: (1)
the City's Municipal Code, Title 2-32, which guarantees a permanent employee both
*pretermination notice and hearing before termination for "inexcusable absence without leave"*;
(2) the Massachusetts Civil Service statute, M.G.L. c. 31, §43, whereby an aggrieved employee
can secure a hearing at the Civil Service Commission to challenge a serious adverse action by an
appointing authority for lack of just cause; and (3) the collective bargaining agreement between
Plaintiff's Union and the City, which provides that "[t]he Fire Fighters covered by this
Agreement shall retain their Civil Service rights now in effect as provided by Chapter 31 of the
General Laws of Massachusetts.

### 1.    Mr. Patterson Has A Property Interest In Continued Employment Pursuant To The Woburn Municipal Code, Section 2-32.

Mr. Patterson's property interest in his continued employment as a firefighter could not
be more explicitly defined than it is under Section 2-32 of the City's Municipal Code. Section 2-
32 (attached hereto as Exhibit F, Coles Affidavit, Ex. 4) explicitly provides that an employee
"may be demoted or dismissed for just cause, provided the following procedures are adhered to:

> 1.    The employee shall be notified in writing of the contemplated sanction and the reasons for such action five (5) working days prior to the effective date of such action and a copy of said notice shall be filed with the personnel director.

> 2.    The employee shall be granted a hearing before the mayor within five (5) working days after notification of dismissal or demotion and the mayor will render a decision five (5) working days thereafter.

See, Ex. F, Coles Affidavit, Ex. 4.

Further, Section 2-32 goes on to define "just cause" to cover the alleged unauthorized absence that Mr. Patterson is accused of. Thus, just cause for termination is defined to include "9. Inexcusable absence without leave."

Section 2-32 is plain on its face: prior to the City's termination of Mr. Patterson for unauthorized absence it needed to provide him with (a) *notification of the contemplated termination* at least five days before the effective date of the termination and (b) a hearing before the mayor within five (5) days of the same notification of his termination. Since the termination can only occur at least 5 days *after* the notification, the hearing must occur before the termination. In sum, Section 2-32 clearly establishes Mr. Patterson's property interest in his public employment.

Other courts have firmly held that local ordinances similar to the City's Municipal Ordinance establish a public employee's property interest in continued employment and, as a result, entitle the public employee to pretermination notice and hearing for alleged unauthorized absence from work. Thus, in *Hudson v. City of Chicago*, 374 F.3d 554, 559-562 (7th Cir. 2004), the Seventh Circuit held that the City of Chicago's policy on terminating employees for unauthorized absences gave the plaintiff a property right to a due process notice and hearing prior to the termination of his employment for unauthorized absence. As a result, the court held that the police department was required under due process clause to notify officers that they were on unauthorized absence and offer them opportunity to justify or otherwise challenge their unexplained absences *before* terminating them.

Similarly, in *Sturgess v. Negley*, 761 F. Supp. 1089 (D. Del. 1991), the court rebuffed the town's attempt to avoid providing an employee with a pretermination hearing by characterizing the employee's termination as an unauthorized absence or resignation. The court observed that

the town ordinance, similar to the Woburn Municipal Code, required a hearing before the town

could terminate an employee for unauthorized absence. Accordingly, the court found plaintiff

employees, terminated for unauthorized absence, had a property interest and a constitutional

right to pre-termination notice and hearing. 761 F. Supp. at 1094. The court observed, "this

Court has previously rejected the argument of a town which treated an employee's "alleged

unexcused absences as an implicit resignation," and held that "[a] public employer cannot

circumvent its constitutional obligations by recharacterizing an employee's termination as a

resignation." 761 F. Supp. 1089, 1094, *citing Meding v. Hurd*, 607 F. Supp. 1088, 1108 (D. Del.

1985). As the court stated:

> There can be no dispute that defendants did not provide plaintiffs with
> such notice and an opportunity to respond before plaintiffs were officially
> separated from their positions. Negley and Clower did not even contact plaintiffs
> to inquire as to the reasons for their absences, and the . . . letters do not offer
> plaintiffs a chance for each to present his side of the story before any decision
> would be final. The fact that plaintiffs were subsequently given a public hearing
> is insufficient, because the due process clause "requires 'some kind of hearing'
> prior to the discharge of an employee who has a constitutionally protected
> property interest in his employment.

761 F. Supp. 1089, quoting *Loudermill*, at 470 U.S. at 542, quoting *Board of Regents v. Roth*,

408 U.S. 564, 569-570 (1972). (Plaintiff police officers entitled to pretermination hearing where

they were terminated for alleged unauthorized absence from work)

### 2. Mr. Patterson Has A Property Interest In His Continued Employment Pursuant To Massachusetts Civil Service Law, M.G.L. c. 31, Section 38 And The Collective Bargaining Agreement.

Mr. Patterson, a tenured firefighter for the City, has a property interest in his continued

employment pursuant to Massachusetts Civil Service Law and the collective bargaining

agreement between his Union and the City.

14

Chapter 31 of the Massachusetts General Laws sets out procedural requirements for a Civil Service appointing authority seeking to discipline a tenured employee, and provides for appeals to the Civil Service Commission, in the first instance, and judicial review of the Commission's decision. M.G.L. c. 31, §§41-44. For all discharges and suspensions of five days or more, the employee is entitled to prior written notice of the contemplated action. The notice must contain the nature of the discipline contemplated, the reasons for the action and a copy of M.G.L. c. 31, §§41-43. A full pre-disciplinary hearing before the appointing authority or a designated hearing officer must be conducted, with at least three days prior written notice to the employee. Pursuant to the Massachusetts Civil Service statute, M.G.L. c. 31, §43, an aggrieved employee can secure a hearing at the Civil Service Commission to challenge a discipline by an appointing authority for lack of just cause. Similarly, the collective bargaining agreement between Mr. Patterson's Union and the City provides that "[t]he Fire Fighters covered by this Agreement shall retain their Civil Service rights now in effect as provided by Chapter 31 of the General Laws of Massachusetts."

Nor can Defendants suggest that Mr. Patterson is not entitled to a pretermination notice and hearing because he is charged with unauthorized absence or because he was given a *post-*termination hearing. As the case law cited in the previous section (*Hudson v. City of Chicago*, 374 F.3d 554, 559-562 (7th Cir. 2004) and *Sturgess v. Negley*, 761 F. Supp. 1089 (D. Del. 1991)) demonstrate unequivocally, the mere fact that the termination is for unauthorized absence from work does not divest the employee of his constitutional right to notice and hearing before termination. As the court in *Sturgess* stated, "[a] public employer cannot circumvent its constitutional obligations by recharacterizing an employee's termination as a resignation [based on unauthorized absence]." 761 F. Supp. at 1089.

Defendants' expected response, that Mr. Patterson is not entitled to a due process hearing prior to his termination under M.G.L. c. 31, §38, rests on a fundamental misunderstanding of the law. Contrary to Defendants' claim, Mr. Patterson's right to notice and a hearing prior to the termination of his employment does not depend on whether such a hearing is provided for in M.G.L. c. 31, §38. Rather, his right to such notice and hearing springs from his employment as a fire fighter with the City and his property interest in his continued employment with the City. The fact that the statute does not explicitly provide for a pre-termination hearing is of no relevance. Many statutes, including §M.G.L. c. 41, §111F, confer property interests that cannot be terminated without prior notice and hearing. The fact that those statutes do not explicitly confer the right to a pretermination hearing is irrelevant. The right to such a hearing springs from the Fourteenth Amendment, rather than the state statute.[3]

**B.    PLAINTIFF WAS ENTITLED TO NOTICE AND HEARING PRIOR TO THE TERMINATION OF HIS INJURY LEAVE BENEFITS UNDER M.G.L. c. 41, §111F PURSUANT TO HIS PROPERTY INTEREST UNDER THE FOURTEENTH AMENDMENT.**

Defendants failed to provide Mr. Patterson with due process prior to terminating his injury leave benefits under M.G.L. c. 41, §111F. Pursuant to M.G.L. c. 41, §111F, the City is required to maintain Mr. Patterson's injury leave "without loss of pay for the period of such

---

[3]    Similarly, Defendants' expected claim (as set forth in their Opposition to Plaintiffs' motion for preliminary injunction) that "other Massachusetts statues limiting a public employee's access to pre-determination notice and an opportunity to be heard" have been "upheld," does not rest on any post-*Loudermill* case law addressing public employee due process rights under the Fourteenth Amendment of the United States Constitution, the basis of Mr. Patterson's claim. Rather, Defendants' claim rests on state court cases predating *Loudermill*. The plaintiff's claim to a notice and hearing prior to termination in *Boston Teachers Local 66 v. School Comm. of Boston*, 386 Mass. 197 (1982), was brought under M.G.L. c. 71, §42, not the Fourteenth Amendment. Similarly, both *Boston Teachers Local 66* and the other state court case cited by Defendants in their earlier memorandum, *Martin v. School Comm. of Natick*, 393 Mass. 430 (1984) predate *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S.. 532, 538 (1985), the seminal case establishing that an employee's property interest cannot be subsequently terminated without the appropriate procedural safeguards of notice and an opportunity to be heard. As such, these state court cases do not constitute precedent in the instant matter.

incacity."[4]  It is well established that M.G.L. c. 41, §111F creates a property interest in leave with pay for firefighters who are injured in the line of duty. *Chicklowski v. City of Springfield,* No. 94-30046-FHF, Slip Op. at 8-12 (D. Mass. July 12, 1995) (attached hereto as Ex. G); *Egan v. City of Northampton,* No. 95-30004-FHF, Slip Op. at 5 (D. Mass. Nov. 29, 1995) (attached hereto as Ex. H); *Cantoni v. City of North Adams,* No. 99-30278-FHA, Slip. Op. at 2 (D. Mass. May, 26, 2000) (attached hereto as Ex. I).  Thus, prior to the termination of section 111F benefits, an individual must be provided due process of law.

While due process does not require a formal, evidentiary pre-termination hearing, some form of notice and an opportunity to present reasons why the proposed action should not be taken is required prior to the deprivation of a property interest. *Loudermill,* 470 U.S. at 545-546. *See also, Mathews v. Eldridge,* 424 U.S. 319, 343 (1976); *Moody v. Town of Weymouth,* 805 F.2d 30, 33 (1st Cir. 1986).  Here, it is undisputed that Plaintiff had his M.G.L. c. 111F benefits terminated on September 25, 2004 without the opportunity to be heard.

Defendants' expected claim (as set forth in Defendants' opposition to Plaintiff's motion for preliminary injunction), that Mr. Patterson's visit with his own treating physician on September 10, 2004 provided him with "constitutionally adequate notice and an opportunity to be heard," lacks any merit.  It is undisputed that Mr. Patterson was not told that his injury leave benefits were being terminated during the meeting with his treating physician.  Further, it is undisputed that this type of office visit had never constituted such a determination during Mr. Patterson's prior injury leaves.  Rather, Mr. Patterson had always waited for the Fire Chief's notification that he should return to work on a particular date, on a particular shift, and with particular duties.  Finally, it is undisputed that Mr. Patterson continued to receive his injury leave

---

[4]    The statute provides in pertinent part, "Whenever a...firefighter of a city or town...is incapacitated for duty because of injury sustained in the performance of his duty without fault of his own...he shall be granted leave without loss of pay for the period of such incapacity..."  M.L.G. c. 41, § 111F.

benefits *after* his visit to his treating physician and after the results of that visit had been communicated to the City's Human Resource Director and the Fire Chief.

Indeed, the reasonableness of Mr. Patterson's conduct is proven by the City's own admissions, as set forth in the affidavit of Jan Cox, the City's Human Resource director. Ms. Cox, *admits in her affidavit that Ms. Casale-Luz contacted her on September 10, 2004 during which Ms. Casale-Luz informed her that Mr. Patterson was cleared for light duty.* See, Ex.E, ¶10. Further, Ms. Cox admits that she then spoke to Chief Tortolano on *September 15, 2004 and informed him that Mr. Patterson had been cleared for light duty.* See, Ex. E, Cox Aff., ¶11. Accordingly, Mr. Patterson's understanding is borne out by Ms. Cox's own admissions.

Mr. Patterson's understanding that Chief Tortolano would contact him after September 10, 2004 with his limited duty assignment is also consistent with Mr. Patterson's prior experience in returning from injured on duty leave to limited duty assignments. Thus, Ms. Casale-Luz, rather than Mr. Patterson, contacted the City after Mr. Patterson's earlier visit with Dr. Pedlow on June 7, 2004, when Dr. Pedlow cleared Mr. Patterson to return to limited duty. Ms. Casale-Luz was at the June 7, 2004 visit and stated that she would contact the City. Thereafter, Ms. Casale-Luz, wrote to Ms. Cox, the City's Human Resource Director, and set forth Dr. Pedlow's medical findings and his determination that I could return to modified duty "the first week of July." Further, Ms. Casale-Luz's "recommendation" was to "[c]ontact Mr. Patterson periodically to monitor progress." See, Ex. A, Patterson Affidavit, ¶3. This letter was copied to the Woburn Fire Department. *Id.* One month later, Chief Tortolano had contacted Mr. Patterson by letter and set forth his limited duty assignment. At no time after June 7, 2004 did Chief Tortolano, Ms. Cox, or any other representative of the City, suggest that it was Mr. Patterson's responsibility to send in the medical information or contact the City or suggest that

he had somehow been remiss in not contacting Chief Tortolano or Ms. Cox as to the results of his June 7, 2004 appointment. Ex. D, Supp. Patterson Aff., ¶8. In addition, in or around April 22, 2004, Chief Tortolano had communicated directly with Dr. Pedlow, inquiring as to whether Mr. Patterson could perform limited duty and, if so, what limited duty position he could perform. See, Ex. D, Supp. Patterson Aff., ¶8, Ex. 2.

Finally, Mr. Patterson's belief that the Fire Department would contact him with his limited duty assignment after it was contacted by Ms. Casale-Luz, was based on his earlier return from injured on duty leave to limited duty during 2000. After he sustained a work-related injury on or about July 18, 2000 (fractured femur, knee injury). Thereafter, Chief Tortolano corresponded directly with the medical examiner, Dr. William B. Patterson. See, Ex. D, Supp. Patterson Aff., ¶9. Chief Tortolano's letter requested Dr. Patterson's medical opinion as to what limited duty positions Mr. Patterson was capable of performing. Thereafter, on or about September 27, 2000, Mr. Patterson received a letter from Chief Tortolano notifying Mr. Patterson of his assignment to computer data entry and the date he was to return to work (October 2, 2000). See, Ex. D, Supp. Patterson Aff., ¶9. In sum, Mr. Patterson had every reason to believe that Chief Tortolano would do the same thing after Mr. Patterson's September 9, 2004 appointment with Dr. Pedlow. Accordingly, his absence from work after September 10, 2004 in no way can be construed as unauthorized. Rather, he remained on §111F benefits while he awaited Chief Tortolano's assignment.

In the face of all of this evidence, Defendants speciously claim that Mr. Patterson should have known that he was expected to return to work after September 10, 2004 based on Chief Tortolano's earlier communications to Mr. Patterson on July 7, 2004 and June 13, 2004. In fact, nothing in either of Chief Tortolano's earlier letters even remotely suggests that Mr. Patterson

was put on notice that he should return to limited duty after September 10, 2004 absent Chief Tortolano's order to do so. On the contrary, the letters only advised Mr. Patterson that the Chief had been contacted by Ms. Casale-Luz regarding Dr. Pedlow's findings, that Mr. Patterson should return to work on limited duty, that Mr. Patterson should ask Dr. Pedlow "to provide us with an up-to-date prognosis as it relates to his anticipated time frame for your return to full duty," and if Mr. Patterson had "any questions," he should contact Chief Tortolano, Inspector Sweeney, or Captain Mills. Neither letter said anything about Mr. Patterson's obligations in the event he went out on injured on duty leave again and then was cleared to return to limited duty. Accordingly, the City's argument fails on the very documents it pretends to rely upon.

The City's own admissions demonstrate that Mr. Patterson's visit to his treating physician did not constitute a pretermination of benefits hearing. Thus, Ms. Cox's affidavit sets forth that the City's nurse case manager, Ms. Casale-Luz, contacted Ms. Cox on September 10, 2004 and reported that Mr. Patterson's treating physician had cleared Mr. Patterson for light duty during his visit on or about September 10, 2004. Ms. Cox further admits that she the spoke to Chief Tortolano on September 15, 2004 and informed him that Mr. Patterson's physician had cleared him to return to light duty. However, despite the fact that the City was aware that Mr. Patterson was cleared to return to light duty, no one from the City ever directed Mr. Patterson to return to work. On the contrary, the City continued paying Mr. Patterson his injury leave pay up through September 25, 2004. In sum, Mr. Patterson's visit to his treating physician on September 10, 2004 cannot be considered a due process hearing.

Similarly, Defendants' expected reliance on the decision in *Mard v. Town of Amherst*, 350 F.3d 184 (2003) is absurd. *Mard* is inapposite to the instant matter in two respects. First, *Mard* only concerned the termination of the plaintiff's §111F benefits, not his termination from

employment. Here, as set forth above, Plaintiff had *both* his employment *and* his 111F benefits terminated without any opportunity to be heard. The First Circuit itself distinguished the facts in *Mard* from a case where the plaintiff's employment is terminated without prior notice or hearing. 350 F.3d 184 at 189-190, citing *Kercado-Melendez v. Aponte-Rogue*, 829 F.2d 255, 263 (1st Cir. 1987) (due process violation where Department of Public Instruction dismissed school district superintendent without prior notice or hearing). Even if Defendants are successful in their claim that Plaintiff's September 10, 2004 visit with his treating physician somehow satisfies his due process rights regarding his §111F benefits, that visit certainly did not put Plaintiff on notice that he would be terminated. Accordingly, the *Mard* case is simply irrelevant to the undisputed fact that Plaintiff was denied his due process right to a pre-termination hearing.

Second, Mr. Patterson's visit to his treating physician on September 10, 2004 is nothing like the independent medical examination provided to the plaintiff in *Mard*. In *Mard*, the firefighter receiving 111F injury leave benefits underwent an *independent medical exam* arranged by the Town for the explicit purpose of determining whether her §111F benefits would be terminated. Both the state statute and the collective bargaining agreement between Mard's union and the Town of Amherst indicated that the purpose of a required independent medical examination by a Town-designated physician was to evaluate an injured firefighter's continued eligibility for §111F benefits. In addition, Mard was notified in writing as to the nature and purpose of the independent medical examination and the potential that her 111F benefits could be terminated.

Here, in contrast, Mr. Patterson visited his treating physician, not an independent medical examiner. Critically, based on the historic practice within the Fire Department, the collective bargaining agreement between the City and the Union, and Mr. Patterson's own experience, Mr.

Patterson understood that his §111F benefits would not be terminated simply because his treating physician had cleared him to return to limited duty. Rather, Mr. Patterson had every reason to believe that his §111F benefits would only be terminated after he was contacted by Chief Tortolano and given a date to return to work and an assignment. This was the uniform practice within the Fire Department and Mr. Patterson had no reason to believe that his return to limited duty in September, 2004 would be any different. In sum, Defendants simply cannot claim that Mr. Patterson was apprised of the termination of his benefits as a result of his visit to his treating physician on September 10, 2004.[5]

Accordingly, Mr. Patterson was entitled to a due process hearing before his §111F benefits were terminated. Defendants did not provide this. Instead, on September 30, 2004, Chief Tortolano notified Mr. Patterson that he was on an unauthorized absence from work and that he was considered separated from employment. Despite the fact that Mr. Patterson then requested a hearing, Mr. Patterson found out on October 7, 2004 that Defendants had terminated his §111F benefits as of September 25, 2004. Mr. Patterson's first hearing, when it finally came, occurred on October 18, 2004, over three weeks *after* the termination of his Section 111F benefits and in clear violation of Mr. Patteron's constitutional due process rights.

## CONCLUSION

Based on the reasons set forth herein, and based on the affidavits and exhibits attached hereto, this Court should grant Plaintiffs' motion for summary judgment on liability.

---

[5]     Indeed, the collective bargaining agreement between Plaintiff's Union and the City of Woburn allows for the City to "arrange for a medical evaluation regarding the length and extent of disability, including an opinion as to the ability of the employee to perform limited duty." Ex. B, Peary Aff., Ex. 1, Article 3, Section 3 (2), Procedure. Here, it is undisputed that Plaintiff's visit with his treating physician was not a "medical evaluation" set forth in the collective bargaining agreement. Rather, Plaintiff's only understanding after his visit was that sometime thereafter he would be contacted by the Chief and assigned a limited duty position. He was never put on notice that his 111F benefits would be terminated if he did not return to work. In fact, it is undisputed that the City never notified him of when he was supposed to return to work and never attempted to contact him after they believed he was supposed to return to work.

Respectfully submitted,

STEPHEN PATTERSON and WOBURN
FIRE FIGHTERS ASSOCIATION,
LOCAL 971, I.A.F.F.,
By their attorneys,

Dated: _____, 2004

_____
Terence E. Coles, BBO #600084
Pyle, Rome, Lichten, Ehrenberg
      & Liss-Riordan, P.C.
18 Tremont St., Ste. 500
Boston, MA 02108
(617) 367-7200

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document
was served upon the attorney of record for each other
party by mail/hand on   12\15\04

23