UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04 CV 12190 JLT

STEPHEN PATTERSON AND WOBURN FIRE )
FIGHTERS ASSOCIATION, LOCAL 971, I.A.F.F., )
                   Plaintiffs, )
VS. )
 )
PAUL TORTOLANO, CHIEF OF THE CITY )
OF WOBURN FIRE DEPARTMENT AND )
CITY OF WOBURN, )
                   Defendants. )

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

The defendants, Paul Tortolano, Chief of the City of Woburn Fire Department, and City of Woburn, submit this memorandum of law in opposition to the plaintiffs' motion for summary judgment on liability and in support of their cross-motion for summary judgment. For the reasons set forth below and in the Affidavits and Exhibits attached hereto, the defendants ask that the plaintiffs' motion be denied and that, instead, the Court enter summary judgment in their favor on Count III of the plaintiffs' complaint, the only count remaining.[1] They have submitted herewith a cross-motion for summary judgment and submit the statement of facts and arguments herein and attachments hereto as support for the same.

**I. Introduction.**

The defendants dispute certain characterizations contained in the "Introduction" section of their memorandum, i.e. that they "saw the writing on the wall" and had

---

[1] The plaintiffs have dismissed the other counts of the complaint. See Plaintiffs' Memorandum of Law in Support of Summary Judgment, n. 1.

1

engaged in "unlawful conduct." The defendants did not engage in any unlawful conduct and did not deprive the plaintiff Stephen Patterson of any right to due process under the Fourteenth Amendment. Accordingly, the Court should deny the plaintiffs' motion for summary judgment on liability. Rather, based on the undisputed material facts, the defendants did not violate the plaintiff's right to due process in any respect and, as such, they are entitled to summary judgment in their favor in this case.

## II. Factual Background

### A. Defendants' Response to Plaintiffs' Statement of Facts.

1. The defendants agree that plaintiff Stephen Patterson has been a full-time permanent firefighter for the City since 1980 and served in a reserve or provisional capacity since 1975.

2. The defendants admit the statement in this paragraph.

3. The defendants admit the statement in this paragraph.

4. The defendants respond and admit that Mr. Patterson has required frequent leave for an injury on duty and that he has also required injury on duty leave for other injuries he sustained some years later. See Affidavit of Paul Tortolano, ¶ 6, at Exhibit 1. The defendants are without knowledge or information sufficient to respond to the remaining allegations of this paragraph.

5. The defendants respond that the Collective Bargaining Agreement is a written document that speaks for itself. They admit that Article 3, Section 3 of that Agreement does provide for a "Limited Duty Policy and Procedure" but submit that the plaintiffs have omitted important language in their quote of that Section. For example, the opening paragraph of that Section also states in pertinent part that:

> "The intent of this policy is to provide a procedure and mechanism for employees who, although unable to perform full fire fighting duty, are capable of performing meaningful duties within the Woburn Fire Department

> **....monitoring their medical condition by a physician to determine whether limited duty should continue or be ended either by a return to full fire fighting duty or by termination of employment ....."** (emphasis added).

See Collective Bargaining Agreement, Article 3, Section 3, at Exhibit 2.

6-7.    The defendants dispute the statement in these paragraphs to the extent they are incomplete and thus misleading. The defendants respond by clarifying the practice of the Fire Department. It is true that when an employee needs to be reassigned either to or from light duty or to a new assignment that involves a change of station or assignment to a new group, the Chief will provide the Department with written notice of such transfer within any required period of time. Tortolano Affidavit, ¶ 5. This is what occurred in connection with Mr. Patterson's injury on the job in 2000, referenced in paragraph 7, when he was being reassigned to light duty after medical clearance.

However, when a firefighter takes vacation, sick leave or other leave and will be returning to his or her prior duty, it is not the practice to send that firefighter a new notice requiring them to return to their prior duty. Tortolano Affidavit, ¶ 5. This is what occurred in the situation at issue here when he was already assigned to light duty when he went out again.

8.    The defendants respond and admit that Mr. Patterson had complained of an aggravation to his preexisting injuries and was placed on leave from full duty in April 2003 and that he remained on leave until July of 2004. Tortolano Affidavit, ¶ 7. They are without knowledge or information sufficient to respond to the details of Mr. Patterson's course of treatment and whether or not he had reached an "endpoint" in noninvasive treatments, for example, or of any other medical diagnosis or opinion or procedure and thus do not admit the same as contained in the remainder of this paragraph.

9.     The defendants respond and admit that the City did receive notice that Mr. Patterson was able to return to a limited duty position as of "July 2004." Tortolano Affidavit, ¶ 7; Notice, at Exhibit 3.  The defendants respond that the City did employ Ms. Casale-Luz to act as nurse case manager from Mr. Patterson's injury on duty leave since at least 2001.  Affidavit of Jan Cox, ¶ 7, at Exhibit 4.  Ms. Casale-Luz's practice has been to provide the City Human Resources Director, Jan Robbins Cox, with written case status material along with her bill on a roughly monthly basis.  Id.  As a result of this practice, several weeks can elapse between her attendance at a medical exam and the City's receipt of her written reports.  Id.  Although Ms. Casale-Luz and Ms. Cox do confer by telephone occasionally, such communications do not occur regularly or on all cases.  Id.

10.    The defendants respond and admit that Chief Tortolano sent Mr. Patterson a letter dated July 7, 2004 that stated as quoted.  See Letter, at Exhibit 5.

11.    The defendants dispute that the plaintiffs have fully or accurately described the communications between Mr. Patterson and Chief Tortolano at or about this time.  They admit that Mr. Patterson returned to duty in a data entry position.

12.    The defendants dispute this statement.  In his letter to Mr. Patterson of July 7, 2004 regarding the light duty assignment, Chief Tortolano states "If you have any questions, please speak to me in person."  See Letter.  Also, his July13 letter specifically advised Mr. Patterson of his obligation to keep the City informed of his prognosis.  See Letter, Exhibit 6.  That letter states:

> "Also, during your next visit to your attending physician please ask him to provide us with an up-to-date prognosis as it relates to his anticipated time frame for your return to full duty.  Any questions you may have should be directed through Inspector Sweeney, Captain Mills or me, as necessitated by the subject matter."

Id.

4

13-14. The defendants respond and admit that the Chief issued the notice which notice speaks for itself. They further respond that this procedure was in accordance with the practice as set out and clarified in this memorandum in paragraph 6-7 supra, and not that "historic practice" suggested by the plaintiffs.

15. The defendants respond and admit that Mr. Patterson returned to work in July 2004 in a data entry position. They deny the remaining statements in this paragraph.

16. The defendants dispute the statement in the first sentence of this paragraph. They admit that Mr. Patterson took vacation leave beginning August 2, 2004 and that several days later he began taking sick leave. They are unaware and thus do not admit that the plaintiff took such leave because of back pain. On or about August 16, 2004, Mr. Patterson submitted a request that his time off since August 2, 2004 be considered injury-on-duty leave. This request for retroactive leave was rejected as it was not confirmed by medical documentation. Tortolano Affidavit, ¶ 8. The defendants admit that Mr. Patterson was placed on injury-on-duty status as of August 18, 2004 and that he received injury leave benefits from that date until September 25, 2004.

17. The defendants dispute this statement to the extent it references September 10th. The examination occurred on September 9th, 2004. The defendants admit that Mr. Patterson's treating physician determined that he was able to return to light duty work on that date. Patterson Supplemental Affidavit, ¶ 5, at Exhibit D to Plaintiffs' Motion. Also, Ms. Casale-Luz did have a telephone conversation with Ms. Cox on September 10, 2004 in which she relayed that Mr. Patterson had been informed he could return to his light duty position. Cox Affidavit, ¶ 10.

18. The defendants respond and admit that Ms. Cox spoke with Chief Tortolano on September 15, 2004. Her affidavit, however, states that she asked the Chief whether Mr.

Patterson had provided him with a copy of his doctor's note and that he said that he had not. Cox Affidavit, ¶ 11. Ms. Casale-Luz likewise did not have a copy. Id.

19. The defendants deny the statement in the paragraph and refer to the actual practice as stated above in paragraph 6-7. It is undisputed that in this instance, Mr. Patterson was already assigned to limited duty when he went out on injury. When a firefighter goes on out leave and will be returning to his or her prior duty, it is not the practice to send that firefighter a new notice as suggested by the plaintiffs. Tortolano Affidavit, ¶ 5.

20. The defendants deny that Mr. Patterson did not have a light duty assignment as of September 10, 2004. Answering further, the defendants state that Mr. Patterson knew or should have known of his obligation to report to duty and/or communicate his condition to the defendants but failed to do so. The defendants deny that there was any obligation to remind or otherwise inform Mr. Patterson of his responsibilities.

21. The defendants respond and state that Chief Tortolano did send Mr. Patterson a letter dated September 30, 2004, and further submit that the letter is a document that speaks for itself.

22. The defendants dispute the statement in this paragraph. Mr. Patterson knew he had been cleared to return to his light duty position as of September 9, 2004 and that he already had a light duty assignment.

23. The defendants dispute this statement. They admit only that on October 5, Mr. Patterson requested a hearing "as pertains to the status of my employment ...." See Exhibit 7 to Plaintiffs' Motion for Summary Judgment.

24. The defendants dispute this statement inasmuch as it contains hearsay, relates only a portion of a claimed conversation, and is otherwise irrelevant to the extent it relates Mr. Peary's "understanding" as to Mr. Patterson's benefits and the Union's

"belief" about hearings and the Chief's purported failure to return Mr. Peary's telephone call.

25. The defendants respond and admit that Mr. Patterson did not receive a paycheck on or about October 7, 2004 and that his pay had been discontinued. They otherwise dispute the remaining statements in this paragraph inasmuch as they contain hearsay and are otherwise irrelevant, including any stated "beliefs."

26. The defendants dispute this statement to the extent it contains hearsay and does not fully or accurately describe the subject communications. The defendants further respond that the email from Attorney Coles to Attorney Anastasopoulos is a written document that speaks for itself.

27. The defendants respond that the letter from City's counsel is a written document that speaks for itself.

28. The defendants respond and admit that the plaintiff's hearing was held on October 18, 2004.

29. The defendants admit the statement in this paragraph.

30. The defendants respond and admit the statement only to the extent that they reinstated Mr. Patterson, effective November 1, 2004.

31. The defendants respond and deny the plaintiff suffered any irreparable harm or that they engaged in any unlawful conduct. They admit that plaintiffs' counsel sent the letter to the court on November 9, 2004.

32. The defendants respond that the Municipal Code is a written document that speaks for itself. They have attached as Exhibit 8 hereto the complete provision of the Code that the plaintiffs reference as it appears in the Code as amended through July 15, 2004.

## B. Defendants' Statement of Additional Material Facts

In addition to the above facts, as corrected and clarified by the defendants, the defendants state that the following are additional material facts relevant to the motion and opposition:

33. The pertinent Article of the Collective Bargaining Agreement, Article 3, also provides in pertinent part that:

> "The City will arrange for a medical evaluation regarding the length and extent of disability, including an opinion as to the ability of the employee to perform limited duty. In the event that the employee disputes the City's medical evaluation, he may elect to be examined by his/her own physician at the expense of the employee, and said physician shall be afforded a full opportunity to consult with the City physician as to the fitness of the employee to perform limited duty."

Article 3, Section 3(2), captioned "Procedure."

34. Prior to the most recent leave at issue in this matter in August 2004, Mr. Patterson was on leave from April 2003 to July 2004. During that leave, the City sent Mr. Paterson to an independent medical examination with Dr. Robert Pennell. Cox Affidavit, ¶ 22. A copy of Dr. Pennell's report is attached at Exhibit 7. His review of Mr. Patterson's medical history revealed that Mr. Patterson was complaining of numerous symptoms that were not likely to be related to his on duty injuries. Id.

35. Dr. Pennell's found that there was "no causal connection" between Mr. Patterson's complaints and his on duty injuries and that Mr. Patterson could return to full duty without restrictions, yet Mr. Patterson refused to return to duty until July 2004 and only after being cleared to return to duty by his physician. Cox Affidavit, ¶ 23; Tortolano Affidavit, ¶ 7.

36. At Mr. Patterson's June, 2004 follow-up appointment, his physician not only cleared him for light duty as of July, 2004 but indicated that Mr. Patterson was to

follow-up with him "on September 9, 2004 to progress to full work at that time." Progress Report, at Exhibit A(3) to Plaintiffs' Motion.

37. Mr. Patterson went on vacation from his light duty position beginning August 2, 2004. Cox Affidavit, ¶ 8. When he was out on vacation, he began submitting requests for sick leave on or about August 6, 2004. Id. On or about August 1, 2004, the City received a request that Mr. Patterson be placed on full injured status retroactive to the beginning of his vacation. Id. That request was denied, and he was placed on injured status effective August 18, 2004. Id.

38. The City learned in late August 2004 that Mr. Patterson had a follow-up appointment with his physician on or about September 9, 2004 and that his physician had been on vacation at the time of the August 16 request for leave. Cox Affidavit, ¶¶ 9, 16.

39. As of September 15, 2004, Mr. Patterson still had not provided the note to the City from his doctor. Cox Affidavit, ¶ 11. Although Mr. Patterson had the only copy of the note, he stated that he thought the note had been provided via the case manager, Ms. Casale-Luz. Cox Affidavit, ¶ 18. Nurse case manager Ms. Casale-Luz, however, had not been provided with a copy of the note. Id. ¶ 11.

40. Although cleared to return to his light duty position on September 9, 2004, by late September, 2004, Mr. Patterson still had not reported back to his light duty assignment. Cox Affidavit, ¶ 13.

41. Mr. Patterson contends he was waiting for the Chief to contact him, but when a firefighter takes vacation, sick leave or other leave and will be returning to his or her prior duty, as here, it is not the practice to send that firefighter a new notice requiring them to return to their prior duty. Tortolano Affidavit, ¶ 5.

42.     As Mr. Patterson had abandoned his position pursuant to M.G.L. c. 31, § 38, he was sent a notice pursuant to that section. See Letter, Exhibit 9. A hearing was conducted with regard to the same on October 18, 2004. Cox Affidavit, § 14.

43.     Mr. Patterson first provided the medical note from his physician to the City on October 18, 2004. Cox Affidavit, ¶ 10.

### III. Argument

In Count III, the plaintiffs allege that the defendants "unilaterally terminat[ed] Plaintiff's statutory injured on duty benefits and terminat[ed] his employment without conducting any pretermination hearing or opportunity to be heard" and violated plaintiff's rights to due process of law under the 14th Amendment. As discussed herein, the defendants complied with the applicable statutory scheme regarding Mr. Patterson's unauthorized absence from duty and provided adequate notice and opportunity to be heard with respect to the injured on duty benefits. The defendants did not violate the plaintiffs' right to due process in any respect and the plaintiffs are thus not entitled to summary judgment in their favor on liability. Rather, it is the defendants who are entitled to summary judgment in their favor on this count.

**A. The Defendants Complied with the Statutory Scheme Pursuant to Which Civil Service Employees Are Reported as Separated from Service on Account of Unauthorized Absence and There was No Constitutional Violation of Any Right to Due Process.**

The plaintiffs are not entitled to summary judgment in their favor on their claim of a violation of due process in connection with the termination of Mr. Patterson's employment. Their argument on this subject misses an important point – that Mr. Patterson's conduct in failing to return to duty or otherwise inform the City of his medical status constituted a voluntary abandonment of his position pursuant to state law. Massachusetts General Laws c. 31, § 38 clearly states that a public employee who

has failed to return for duty without authorization may then be sent a letter indicating that he "is considered to have permanently and voluntarily separated himself from the employ" of the employer. The statute speaks in the present tense – that the employee "is considered" as separated from the employ. The employee may, within ten days request a hearing as to why he should be "restored" to his position.[2] Id. The language of the statute thus makes it clear that the Legislature did not contemplate a "pretermination" proceeding in cases of abandonment. It does not provide for any, but does provide for a post-procedures.[3] Mr. Patterson here ultimately was reinstated to his position.

---

[2]   The statute, G.L. c. 31, § 38, further provides that;

> The appointing authority may restore such person to the position formerly occupied by him or may grant a leave of absence pursuant to section thirty-seven if such person, within fourteen days after the mailing of such statement, files with the appointing authority a written request for such leave, including in such request an explanation of the absence which is satisfactory to the appointing authority. The appointing authority shall immediately notify the administrator in writing of any such restoration or the granting of any such leave.
>
> If an appointing authority fails to grant such person a leave of absence pursuant to the provisions of the preceding paragraph or, after a request for a hearing pursuant to the provisions of this section, fails to restore such person to the position formerly occupied by him, such person may request a review by the administrator. The administrator shall conduct such review, provided that it shall be limited to a determination of whether such person failed to give proper notice of the absence to the appointing authority and whether the failure to give such notice was reasonable under the circumstances.

[3]   By contrast, other sections in the same chapter specifically require hearings prior to decisions such as whether to implement a disciplinary suspension of five or more days. See G.L. c. 31, §§ 41, 41A.

Like Section 38, there are other Massachusetts statutes limiting a public employee's access to pre-determination notice and opportunity to be heard. For example, notice and hearing is not required pursuant to G.L. c. 71, § 42, which allows for the termination of a tenured teacher without hearing if the decision is based on decreased school enrollment. Boston Teachers Local 66 v. School Comm. of Boston, 386 Mass. 197, N.E. 2d (1982); see also Martin v. School Comm. of Natick, 393 Mass. 430, 435, N.E.2d (1984).

11

Here, the defendants followed the statutory scheme set out in § 38 and plaintiffs do not contend otherwise. Notably, it has been held that the statutory scheme pursuant to which a civil service employee is reported as separated from service on account of unauthorized absence affords that employee notice and right to hearing and thus is not unconstitutional as violative of due process. Canney v. Municipal Court of City of Boston, 368 Mass. 648, 335 N.E.2d 651 (1975) (discussing earlier version of statute). See also 16D C.J.S. Constitutional Law § 1240 (provisions for the automatic dismissal of public employees who are absent without leave for a specified period of time have been held not to violate due process). The plaintiffs fail to recognize this point.

Instead, they argue that Mr. Patterson was somehow entitled to something beyond this statutory scheme of § 38 by virtue of the Civil Service statute provision at G.L. c. 31, § 43 and by the Collective Bargaining Agreement which references the Civil Service statute, as well as by Title 2-32 of the City's Municipal Code.

Section 38, however, expressly states that "[n]o person who has been reported as being on unauthorized absence under this section shall have recourse under *sections forty-one through forty-five* with respect to his separation from employment on account of such absence." (Emphasis added). See also Canney v. Municipal Court of Boston, 368 Mass. 648, 335 N.E.2d 651 (1975) (dismissal for "unauthorized absence" precludes appeal to Civil Service Commission or to District Court). The plaintiffs' reliance upon sections 41-43 of c. 31, and the collective bargaining agreement's reference to the Civil Service statute, is misplaced.[4]

The analysis here is substantially different from the cases of Hudson v. Chicago, 374 F.3d 554, 559-61 (7th Cir. 2004) and Sturgess v. Negley, 761 F. Supp. 1089 (D. Del.

---

[4] The agreement simply states that firefighters covered by the agreement retained their "Civil Service rights now in effect as provided by Chapter 31 ...".

12

1989) relied upon by the plaintiffs. In <u>Hudson</u>, the City of Chicago sought to apply its own job abandonment policy, not a policy imposed by the state or statute. <u>Id</u>. Additionally, the policy there did not contemplate any specific appeal process, contrasting with Section 38 which specifically allows for an appeal to the personnel administrator of the Human Resources Division.

<u>Sturgess</u> likewise did not involve a state law or statute such as that involved here. Notably, the <u>Sturgess</u> court expressly acknowledged that "[p]roperty interests are not created by the Constitution, but by external sources such as state law." <u>Id</u>. at 1094, citing <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). "They exist when a person has not just a unilateral expectation, but a legitimate claim of entitlement to the government benefit." <u>Id.</u> "To constitute a property interest, there must be 'rules or mutually explicit understandings that support [the] claim of entitlement to the benefit.'" <u>Id.</u>, citing <u>Perry v. Sindermann</u>, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). This is determinative. The applicable state law here did not confer upon Mr. Patterson "property interests that cannot be terminated without prior notice and hearing" as plaintiffs contend. Rather, it provided for the action of the defendants pursuant to § 38.

The existence of City's Municipal Code provision cited by the plaintiffs does not alter this point nor create any greater rights. (Exhibit H contains a complete copy of the provision). Subsection A of the section ("Section 8" at pp. 2-33), "Applicability," specifically defers to c. 31 (Civil Service) and its rules regarding suspension, demotion

and dismissal, and to any collective bargaining agreements. As discussed above, § 38 of that statute applies and governs here.[5]

The undisputed facts demonstrate that the defendants complied with the state law here and that their conduct did not violate any due process rights of Mr. Patterson. The plaintiffs thus are not entitled to summary judgment in their favor on this assertion. Again, any entry of summary judgment should be directed in favor of the defendants.

**B.     To the Extent so Entitled, Mr. Patterson Was Provided Adequate Process in Connection with the Termination Of Benefits Under M.G.L. c. 41, § 111F.**

The plaintiffs argue that Mr. Patterson had a property interest in leave with pay pursuant to G.L. c. 41, § 111F. Section 111F states, in pertinent part, that

> "Whenever a ... fire fighter ... is incapacitated for duty because of injury sustained in the performance of his duty ... he shall be granted leave without loss of pay for the period of such incapacity; **provided that no such leave shall be granted for any period** ... after a physician designated by the board or officer authorized to appoint ... fire fighters in such city, town or district, **determines that such incapacity no longer exists.**" (Emphasis added).

"The statute clearly contemplates, in instances not resulting in retirement or pensioning, a return to duty." Hennessey v. Bridgewater, 388 Mass. 219, 226, 446 N.E.2d 58 (1983). The statute thus does not require the City to continue paying an officer until he is capable of returning to the precise duty assignment he was performing at the time of the incapacitating injury. See G.L. c. 41, § 111F. Rather, it has been held that if an officer is not incapacitated from performing any one of the duties to which he might be legally assigned, he is required to perform that duty or forfeit his right to paid disability leave under G.L. c. 41, § 111F. Newton Branch of Massachusetts Police Ass'n v. City of Newton, 396 Mass. 186, 192, 484 N.E.2d 1326 (1985).

---

[5]     The plaintiffs also reference the Hudson and Sturgess cases in their discussion of the municipal code but, as noted above, those cases are inapplicable because they do not involve a state statute or law such as that here.

Here, in June 2004, Mr. Patterson was cleared by his physician for assignment to light duty effective July, 2004. Mr. Patterson was scheduled to follow-up with his physician on September 9, 2004 with regard to progressing to full work. Progress Report, at Exhibit A(3) to Plaintiffs' Motion.

Mr. Patterson was given a light duty assignment in July 2004 at which time he was informed of certain obligations. In Chief Tortolano's letter of July 13, 2004, Mr. Patterson was instructed to arrange for an up-to-date prognosis and anticipated time frame for return to full duty to be provided to the City. (As noted, at this time, Patterson was aware he already had a follow-up appointment scheduled with his doctor for September 9th). Patterson was also specifically placed on notice that, if he had any questions, he should contact his senior officers, specifically Inspector Sweeney, Captain Miller or Chief Tortolano. A similar instruction had been included in the Chief's July 7th letter to Mr. Patterson.

Patterson met with his physician on September 9th, as scheduled, yet he did not arrange for any up-to-date prognosis to be provided to the City. Although he was cleared to return to his light duty assignment on that date, he did not return to duty. He did not call the Chief, or Inspector Sweeney or Caption Miller. He did not provide a copy of the doctor's note to the City. Instead, he stayed home for weeks, did no work for the City, and collected § 111F benefits to which he not entitled.

As Mr. Patterson was able to return to his light duty position as of September 9, 2004 and failed to do so, he forfeited his section 111F benefits. Newton, 396 Mass. at 192. Patterson thus cannot be said to have had a property interest in such benefits and was not entitled to due process of law prior to their termination.

In this respect, the plaintiffs' reliance on three unpublished decisions by Senior Massachusetts U.S. District Court Judge Frank H. Freedman for the proposition that §

111F creates a property interest in leave with pay for firefighters who are injured in the line of duty is inapposite.[6] None of those cases involved a situation like that presented here. But, even if Mr. Patterson's benefits were not extinguished by his failure to comply with his light duty obligations, it remains that he was provided ample notice and opportunity to be heard on the question of whether he should have been returned to light duty and his benefits thus terminated.

Due process requires that the termination of the plaintiff's benefits be preceded by notice and opportunity for hearing appropriate to the nature of the case. Cleveland Board of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1486 (1985). Under the First Circuit's decision in Mard v. Amherst, 350 F.3d 184 (1st Cir. 2003), a medical exam by an agreed upon physician constitutes an adequate opportunity to be heard in connection with the cessation of § 111F benefits.

In Mard, the plaintiff was a firefighter injured in the line of duty. Pursuant to a collective bargaining agreement, Amherst required Mard attend a physical examination which resulted in differing reports from the Town's physician and Mard's physician. Id. at 186. Mard was then ordered to attend an independent medical examination with a physician whom she claimed failed to review her medical records. Id. at 186-187. The examiner found that Mard was able to work in a "moderate duty capacity." Id. at 187.

The First Circuit found that the requirements of due process were satisfied in this situation. The Town had not violated the firefighter's due process rights by providing a medical examination rather than a more formal administrative hearing prior to its decision to terminate the statutory leave benefits, where the decision turned on

---

[6] Chicklowski v. City of Springfield, No. 94-30046-FHF, Slip Op. at 8-12 (D. Mass. July 12, 1995); Egan v. City of Northampton, No. 95-30004-FHF, Slip Op. at 5 (D. Mass. Nov. 29, 1995) and Cantoni v. City of North Adams, No. 99-30278-FHF, Slip Op. at 2 (D. Mass. May 26, 2000).

evaluation of medical evidence, the firefighter had opportunity to present her records and discuss her injury with the physician and had grievance procedures available under the collective bargaining agreement. Id. at 192-193. The same holds true here.

Mr. Patterson had adequate notice of the action being contemplated with respect to his injury benefits. First, M.G.L. c. 41, § 111F explicitly states that "no such leave shall be granted for any period … after a physician designated by the board or officer authorized to appoint … fire fighters in such city, town or district, determines that such incapacity no longer exists. " The statute itself provided notice to the plaintiff that submission to a medical examination in this context might result in the loss of benefits.

Moreover, the collective bargaining agreement further notified Mr. Patterson that submission to a medical examination with respect to an injury might lead to termination of benefits. That agreement explicitly notifies employees that the City could "monitor[] their medical condition by a physician to determine whether limited duty should continue or be ended either by a return to full fire fighting duty or by termination of employment." Agreement, Article 3, Section 3. It further provides that the City "will arrange for a medical evaluation regarding the length and extent of disability, including an opinion as to the ability of the employee to perform limited duty." Article 3, Section 3(2)(a). If the employee disputes the City's medical evaluation, he could elect to be examined by his own physician. Finally, Article 3 notifies the employees that the procedures for review of the employee's injury leave are to be performed in accord with G.L. c. 41, §111F:

> "This policy is not intended as a substitute for the provisions of M.G.L. c. 41, s. 111F and both the City and the employee retain all rights and restrictions granted to them by M.G.L. c. 41, s.111F."

Here, the City had the plaintiff submit to an independent medical examination in October 8, 2003. The physician conducting that exam, upon review of Mr. Patterson's

medical records, the medical history taken from Mr. Patterson, the physical examination of Mr. Patterson, and a review of Mr. Patterson's lumbar MRI scan, concluded that Mr. Patterson was "able to return to work at the present time on a full time, full duty basis" and that "it is not necessary to impose any work limitations." Report, Exhibit 5.

As is permitted under the Agreement, Mr. Patterson thereafter was examined by his own physician. As with Mard then, from the statute and the agreement, Mr. Patterson knew or should have known that he was being examined for the purpose of determining his eligibility for § 111F benefits. His claim to the contrary is disingenuous. In June, 2004, his physician determined he was no longer eligible for § 111F benefits and could be placed on light duty effective July 2004. In September, 2004, that same physician cleared him for return to his light duty position.

In essence, the only significant difference between Patterson and Mard is that Mard was engaged in an independent medical examination while Mr. Patterson was seeing his personal physician. In Mard, the plaintiff alleged she was denied due process because the medical examiner had refused to review her medical records; a claim which the court rejected. Where Patterson was seeing his own personal physician he cannot claim he had less of an opportunity to be heard than Mard. Indeed, he was provided more of an opportunity given that his physician would be familiar with his records, his course of treatment, and his injury in general. Clearly, such examination provided a constitutionally adequate initial check against an erroneous determination that he was physically capable of returning to duty.[7] Mard, at 193.

He claims, however, that the doctor's visits had "never constituted" a determination of his benefits under § 111F but that he had always waited for the Chief's

---

[7] Indeed, the plaintiffs do not challenge Dr. Pedlow's finding that Mr. Patterson was fit to return to light duty.

notification as to particular duties and shifts. The plaintiffs' argument in this respect ignores crucial points. First, § 111F and the collective bargaining agreement contemplate that a physician will determine the employee's medical condition, and thus eligibility for benefits. Second, Mr. Patterson's purported "understanding" that the Chief would contact him with a limited duty assignment after September 9th is not consistent with prior experience. Mr. Patterson has cited no other instance in which he went out on injury from a light duty assignment and, once cleared for return to that assignment, received notification from the Chief regarding the same. Rather, the other instances cited by the plaintiffs are markedly different in that Mr. Patterson suffered injured while on full duty, went out on injury leave, and was then assigned to light duty. In is only in this latter circumstance, when an employee needs to be assigned to or from light duty or to a new assignment that involves a change of station or assignment to a new group, that the Chief will provide the Department with written notice of such transfer. Tortolano Affidavit, ¶ 5. Such was not the case here. Patterson was simply returning to his light duty assignment. [8]

The plaintiffs reference the Cox affidavit as indicating "the reasonableness of Mr. Patterson's conduct," and providing an "admission" of some sort, but again they misquote it with respect to both italicized sentences at page 18. For example, review of the Affidavit reveals that Ms. Casale-Luz informed Ms. Cox that the plaintiff was told he could "return to his light duty position." Also, nowhere does the affidavit state that Ms. Cox told the Chief that Patterson was cleared for light duty. In any event, it is undisputed that he was already assigned a light duty position as of that time and that is the nub of the issue. The affidavit thus actually confirms the unreasonableness of Mr.

---

[8]    Notably, unlike the June, 2004 note which indicated that Patterson would be ready for light duty the following month, the September 9th note indicated that he was

19

Patterson's conduct. It also serves to explain why Mr. Patterson continued to receive injury leave through September 25, 2004. Although plaintiffs suggest this means Patterson was entitled to such benefits, the reality is simply that Ms. Cox, the Human Resources Director, was out of the office until late September. Cox Affidavit, ¶ 12.

As a matter of law, due process permits a limited, pre-termination hearing such as that here where post-deprivation procedures are available. Mard, supra at 193; Moody v. Town of Weymouth, 805 F.2d 30, 32 (1st Cir. 1986). The plaintiffs do not challenge the grievance procedures available under the collective bargaining agreement and there is no evidence to indicate that these procedures were insufficient for due process purposes. Indeed, they were not.

Thus, defendants did not violate any due process rights in the cessation of the § 111F benefits. The plaintiffs thus are not entitled to a summary judgment on this claim. Rather, again, it is the defendants who are entitled to summary judgment in their favor.

## IV. Conclusion

Based on the reasons set forth herein, and the attachments hereto, this Court should deny the plaintiffs' motion for summary judgment on liability. The defendants respectfully submit that, instead, this Court allow their cross-motion and enter summary judgment in favor of the defendants.

Respectfully submitted,

/s/ Leonard H. Kesten
Leonard H. Kesten, BBO# 542042
Deidre Brennan Regan, BBO #552432
BRODY, HARDOON, PERKINS & KESTEN, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100

Dated: January 3, 2005

---

ready for immediate return to light duty