*Exhibit 3*

   

| | |
|---|---|
| Sang-Gil P. Lee, M.D.<br>Frank X. Pedlow, Jr., M.D.<br>George H. Theodore, M.D. | Department of Orthopaedic Surgery<br>Boston Orthopaedic & Spine Specialists, LLC<br>101 Merrimac Street, 7th Floor<br>Boston, Massachusetts 02114 |

## Boston Orthopaedic and Spine Specialists

Date: 6/7/04

To Whom it May Concern:

(Mr.), Mrs., Ms. **Stephen Patterson** is being treated at Boston Orthopaedic and Spine Specialists. Please be advised that s/he is:

☐ Unable to return to work until: _____

☒ Is able to return to work with the following restrictions: _July 2004_
  _Limited Duty - Data Entry Position_

☐ Is able to return to work with no restrictions.

If you have any further questions, please contact our office at (617) 726-1344.

Sincerely,



PARTNERS. HealthCare System Member

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

STEPHEN PATTERSON and WOBURN
FIRE FIGHTERS ASSOCIATION,
LOCAL 971, I.A.F.F.,
    Plaintiffs

V.

PAUL TORTOLANO, CHIEF OF THE CITY
OF WOBURN FIRE DEPARTMENT and
CITY OF WOBURN,
    Defendants

CIVIL ACTION NO. 04-CV-12190 JLT

## AFFIDAVIT OF JAN ROBBINS COX

I, Jan Robbins Cox, being duly sworn, do hereby depose and state:

1. I am employed as Human Resources Director for the City of Woburn. I have held this position since December 1997. In that capacity, I provide human resources administration and support services to all City departments and agencies, including the Fire Department.

2. Stephen Patterson has been a full-time permanent firefighter for the City since 1980 and served in reserve or provisional capacities since 1975.

3. Mr. Patterson has taken a number of injury-on-duty leaves beginning in 1983. Since I began in this position, it is my understanding that Mr. Patterson has been paid for all G.L. c. 41, §111F benefits to which he is entitled and has received compensation for all medical expenses incurred in connection with injuries sustained while on duty.

4. The City of Woburn from time to time employs a nurse case manager to provide assistance in the medical management of City employees who are out on extended leave in their return to work, either on regular duty or light duty or otherwise.

5. The nurse case manager will generally attend medical appointments with employees, make suggestions about treatment, assist physicians or medical personnel in reviewing the employee's job duties and conferring about possible light duty assignments or accommodations.

6. The nurse case manager is an independent contractor and does not generally perform her work on City property. The nurse case manager will frequently prepare progress reports, summaries or other case analyses based upon her interactions with employees or their healthcare providers.

7. In the case of Mr. Patterson, the City employed Linda Casale-Luz to act as nurse case manager for his injury on duty leave since at least 2001. Ms. Casale-Luz's practice has been to provide me with written case status material along with her bill on a roughly monthly basis. As a result of this practice, several weeks can elapse between her attendance at a medical exam and my receipt of her written reports. Although Ms. Casale-Luz and I do confer by telephone occasionally, such communications do not occur regularly or on all cases.

8. Mr. Patterson went on vacation from his light duty position beginning August 2, 2004. While he was on vacation on or about August 6, 2004, he began submitting requests for sick leave. Later, on or about August 16, 2004, the City received a request from Mr. Patterson that he be placed on full injured status retroactive to the beginning of his vacation, August 2, 2004. That request for retroactivity was denied, and he was placed on injured status effective August 18, 2004, the next business day after the request.

9. I learned in late August 2004 that Mr. Patterson had a follow-up appointment with his physician on September 9, 2004, since his physician had been on vacation at the time of the August 16, 2004 note. I also learned that on August 16, 2004, Mr. Patterson had talked to a

physician assistant in Dr. Pedlow's office who, in the doctor's absence, arranged for an MRI to be conducted on Mr. Patterson. I learned at that time that Mr. Patterson was informed that he would have to wait for information on the MRI and for the return of the doctor to the office as the doctor was on vacation through the end of the month. I was also informed that Mr. Patterson had demanded the physician assistant provide him with the August 16, 2004 request for leave despite his physician's absence and that he had requested the physician's assistant include a retroactive date of impairment of August 2, 2004.

10. On or about September 10, 2004, I had a telephone conversation with Ms. Casale-Luz during which I also inquired as to whether Mr. Patterson's physician had seen him yet. Ms. Casale-Luz informed me that she had attended an examination of Mr. Patterson on or about September 9, 2004 and that at that time, Mr. Patterson had been informed that he could return to his light duty position and was provided with a note to that effect. See Exhibit 7 attached to the Defendants' Opposition (not received by me until October 18, 2004).

11. I spoke with Fire Department Chief Paul Tortolano on or about September 15, 2004, and asked whether Mr. Patterson had provided a copy of this doctor's note. The Chief said he had not. I then called Ms. Casale-Luz and inquired if she had a copy of that note. She indicated she did not.

12. I asked Ms. Casale-Luz to communicate with the doctor's office to see if they could provide her with a copy of Mr. Patterson's doctor's note. As I was then out of the office for approximately a week and a half on urgent family business, Ms. Casale-Luz was unable to report to me until late September.

13. I learned that Mr. Patterson had not reported back to duty and had not informed the City that he had been cleared by his doctor to do so.

14. As Mr. Patterson had abandoned his position pursuant to Massachusetts General Laws, Chapter 31, §38, he was sent a notice of a hearing pursuant to that section. That hearing was conducted on October 18, 2004.

15. I attended that hearing and Thomas Lawton, Solicitor for the City of Woburn, swore in Mr. Patterson, requiring him to give truthful and complete testimony under the pains and penalties of perjury. During that hearing, I questioned Mr. Patterson in the presence of Chief Tortolano, who acted as Hearing Officer for the Appointing Authority.

16. During this hearing, Mr. Patterson gave a number of answers under oath that he later retracted or substantially modified. For example, he testified that he had talked to his doctor in mid-August when he had been given a note that he should be placed on injured on duty leave. I asked him specifically if he had talked to his physician, Dr. Pedlow, and Mr. Patterson confirmed that he had. After I reminded Mr. Patterson that Dr. Pedlow had been on vacation at the time, Mr. Patterson changed his testimony and stated that he had not seen or talked to Dr. Pedlow but may have actually talked to a physician's assistant.

17. During further questioning, I asked Mr. Patterson if he had received a note clearing him to return to light duty work on September 9, 2004. Mr. Patterson confirmed that he had received such a note from his physician.

18. I asked Mr. Patterson if he had provided this note to the City. Mr. Patterson's counsel had indicated that Mr. Patterson had provided a copy of this note to the City. When questioned regarding to whom he provided the note, Mr. Patterson changed his testimony and said that he thought a note had been provided to the City by his doctor's office. When I informed Mr. Patterson that he had the only copy of the note, he then said he thought that a note had been provided to the City via the case manager, Ms. Casale-Luz.

19. Mr. Patterson was given an opportunity to present his position on this matter and was accompanied by counsel at all times.

20. The Appointing Authority has not rendered a decision yet in connection with the abandonment hearing held on October 18, 2004. A decision is expected shortly (although no set guideline for return of such decisions is established by statute).

21. The City is continuing to pay Mr. Patterson's medical expenses relating to authorized and appropriate treatments for his on duty injuries.

22. Prior to his most recent leave, Mr. Patterson was on injury-on-duty status from April 2003 through July 2004. During that leave, the City of Woburn sent Mr. Patterson to an independent medical examination with Dr. Robert Pennell. A copy of Dr. Pennell's report is attached to the Defendants' Opposition as Exhibit 12. Dr. Pennell's review of Mr. Patterson's medical history revealed that Mr. Patterson was complaining of numerous symptoms that were not likely to be related to his on duty injuries. Dr. Pennell stated that: "[t]here is also the suggestion that Mr. Patterson may have been engaging in some inappropriate pain behavior..." and that Mr. Patterson suffered from "[n]on-symptomatic, mild degenerative changes" in certain lumbar discs and "[m]ultiple somatic complaints without clear organic cause."

23. Despite Dr. Pennell's finding that there was "no causal connection" between Mr. Patterson's complaints and his on duty injuries and Dr. Pennell's finding that Mr. Patterson could return to full duty without restrictions, Mr. Patterson refused to return to duty until July 2004.

Signed under the pains and penalties of perjury, this 25th day of October, 2004.

                                                     JAN ROBBINS COX
                                                     DIRECTOR OF HUMAN RESOURCES,
                                                     CITY OF WOBURN



**PAUL TORTOLANO**
CHIEF OF DEPARTMENT

# City of Woburn
## Massachusetts

**FIRE DEPARTMENT**

Telephone: (781) 932-4580
Fax: (781) 933-6498

124 Main Street - P.O. BOX 99
Woburn, Massachusetts 01801

July 7, 2004

To: F.F. Stephen Patterson
From: Chief Paul Tortolano
Re: Return to Duty

Firefighter Patterson,

According to your case manager your doctor has given his approval for your return to work on limited duty. You are to report to duty as dispatcher at Station #3 on Group #2 on July 12, 2004. Parking is available at the front of the station and, as you know everything you need is located on the ground floor. If you have any questions, please speak to me in person.

Sincerely,

Chief of Department



**PAUL TORTOLANO**
CHIEF OF DEPARTMENT

# City of Woburn
## Massachusetts

### FIRE DEPARTMENT

Telephone: (781) 932-4580
Fax: (781) 933-6498

124 Main Street - P.O. BOX 99
Woburn, Massachusetts 01801

July 13, 2004

To: FF. S. Patterson
From: Chief Paul Tortolano
Subject: Limited Duty, Data Entry

Steve,

The following outline describes your limited duty assignment until your return to full duty;

Assignment: Data entry/revision in department computer system as directed

Location: Station #1, first floor, department computer station

Hours: Monday thru Friday, 0800-1600

Lunch: 1200-1300

Scheduled injury-related doctor visits and related treatment: on department time with corresponding paperwork on file in advance

Unscheduled visits- notify C-1 or C-2 prior to departure

Uniform: standard fire department work uniform

Additional: see attached limited duty description

Also, during your next visit to your attending physician please ask him to provide us with an up-to-date prognosis as it relates to his anticipated time frame for your return to full duty.

Any questions you may have should be directed through Inspector Sweeney, Captain Mills or me, as necessitated by the subject matter.

Chief of Department

### #2-Limited Duty, Data Entry

This duty entails entry of department records into our computer system at a first floor location at 124 Main Street, Woburn. The hours are 8am to 4pm Monday through Friday. Lunch hour and breaks are provided as needed, as well as disability related time off without penalty to the employee for any medical treatment. Data entry is the extent of the assigned duty. There is absolutely no fire department response duty involved.