UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
)
STEPHEN PATTERSON and WOBURN             )
FIRE FIGHTERS ASSOCIATION,               )          Civil Action No:
LOCAL 971, I.A.F.F.,                     )          04-CV-12190 JLT
     Plaintiffs,                        )
)
v.                                       )
)
PAUL TORTOLANO, CHIEF OF THE CITY OF     )
WOBURN FIRE DEPARTMENT and CITY OF       )
WOBURN,                                  )
     Defendants.                        )
_____)

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

*Introduction*

Plaintiffs have filed a motion for summary judgment on liability concerning Defendants'

failure to provide Plaintiff Firefighter Stephen Patterson with a due process notice and hearing

prior to terminating his employment and statutory injury leave benefits under M.G.L. c. §111F

on September 25, 2004. As a result of Defendants' unlawful conduct, Mr. Patterson was denied

his compensation and/or injury leave benefits from September 25, 2004 until his reinstatement

on November 1, 2004. Defendants have filed an opposition to Plaintiffs' motion for summary

judgment and a cross-motion for summary judgment. As set forth below, Defendants' cross-

motion should be denied and Plaintiffs' motion should be granted because: (1) Defendants'

claim, that Mr. Patterson's examination by his personal physician on September 9, 2004

constituted "an adequate opportunity to be heard in connection with the cessation of his 111F

benefits," is contradicted by the undisputed facts and well-established law; (2) Defendants'

claim, that Mr. Patterson is not entitled to pre-termination due process notice and hearing

pursuant to Title 2-32 of the City's Municipal Code, is contradicted by the terms of Title 2-32;

and (3) Defendants claim, that Mr. Patterson is not entitled to pretermination notice and hearing

under Massachusetts Civil Service law, is premised on their specious attempt to recharacterize

Mr. Patterson's termination as a resignation based on unauthorized absence.

A.     **DEFENDANTS ERRONEOUSLY CLAIM THAT MR. PATTERSON'S VISIT TO HIS PHYSICIAN ON SEPTEMBER 9, 2004 CONSTITUTED ADEQUATE DUE PROCESS PRIOR TO THE TERMINATION OF HIS M.G.L. c. 41, § 111F INJURY LEAVE BENEFITS.**

Defendants' claim, that Mr. Patterson "forfeited his section 111F benefits" when he failed

to return to his light duty position as of September 9, 2004 (Defendants' Memorandum, p. 15), is

contradicted by the undisputed facts set forth in Plaintiffs' Memorandum in Support of Plaintiffs'

Motion for Summary Judgment ("Plaintiffs' Memorandum") which demonstrate that Mr.

Patterson was never notified that he should return to work on a light duty assignment. See,

Plaintiffs' Memorandum, pp. 17-21. Thus, Defendants do not dispute that Mr. Patterson had

never been required to return to work after visiting his treating physician and having his treating

physician clear him for light duty work.  Rather, Defendants admit that the undisputed practice

has always been that Mr. Patterson would await contact from the Fire Chief as to when he should

return to work and what assignment he would be given. *Id.*   Thus, it is undisputed that Mr.

Patterson awaited the Fire Chief's notification as to when he should return to work and the light

duty assignment he would be given after his visit to his treating physician on or about September

9, 2004 and, therefore, Mr. Patterson did not forfeit his section 111F benefits.

Apparently recognizing that Mr. Patterson was justified in awaiting the Fire Chief's

notification as to his date of return and specific assignment, Defendants spend the majority of

their memorandum arguing the preposterous claim that Mr. Patterson's visit to his physician on

September 9, 2004 provided him with "ample notice and opportunity to be heard on the question

of whether he should have returned to light duty . . . ." Defendants' Memorandum, p. 16.  Such a claim is belied by the undisputed facts and contradicts well established law.[1]

Defendants' claim that Mr. Patterson was provided with notice and hearing at his September 9, 2004 visit to his treating physician is premised on their tortuous attempt to analogize the facts in *Mard v. Amherst*, 350 F.3d 184 (1st Cir. 2003) with the facts before this Court.  Defendants' claim, that the language in section 111F provides notice to Mr. Patterson that "submission to a medical examination in this context might result in the loss of benefits," is a patent misstatement of the statute.  Section 111F provides:

> Whenever a police officer or fire fighter of a city, town, or fire or water district is incapacitated for duty because of injury sustained in the performance of his duty without fault of his own, . . . he shall be granted leave without loss of pay for the period of such incapacity; provided, that no such leave shall be granted for any period . . . . ***after a physician designated by the board or officer authorized to appoint police officers or fire fighters in such city, town or district*** determines that such incapacity no longer exists.  (Emphasis supplied).

Here, Mr. Patterson's personal treating physician was not "a physician designated by" the City to determine if Mr. Patterson's incapacity still existed.  In addition, Mr. Patterson's treating physician did not determine on September 9, 2004 that Mr. Patterson was no longer incapacitated for duty.  Rather, it is undisputed that he determined that Mr. Patterson was fit to return only to light duty.  And, pursuant to the terms of the parties' collective bargaining agreement, only the City could decide whether and/or when to provide Mr. Patterson with a light duty assignment.  Accordingly, it is absurd for the City to claim that section 111F provided Mr. Patterson with

---

[1] Defendants' other claim, that Mr. Patterson "forfeited his section 111F benefits" by not returning to "his light duty position" (Defendants' Memorandum, p. 15) has been dealt with exhaustively in Plaintiffs' earlier Memorandum and, as such, does not need an extensive response.  Suffice it to say that the premise of Defendants' claim is contradicted by the undisputed facts.  Thus, it is undisputed that Mr. Patterson was never instructed by anyone in the City to return to work after only being okayed to return to work by his treating physician.  Rather, as Defendants admit, Mr. Patterson (and every other firefighter employed by the City) has always had to wait for the Chief to contact him and give him a date of return and assignment before returning to work.

notice that submission to a medical examination by his treating physician might result in the loss of his section 111F benefits.

Similarly, the City's ambiguous claim, that the collective bargaining agreement between the Union and the City notified Mr. Patterson that his September 9, 2004 medical examination "*might* lead to termination of benefits," is contradicted by the language in the collective bargaining agreement. The collective bargaining agreement provides a procedure through which employees can be assigned to limited duty. Nowhere does the agreement even suggest that a visit to a employee's treating physician constitutes notification that an employee should return to light duty work. On the contrary, Article 3, Section 3 explicitly states that the purpose of the "Limited Duty Policy and Procedure" "is to give the City *the right to assign employees* who have been injured on duty . . . the opportunity to contribute to the work and productivity of the Department and, where possible, protect personal sick leave accumulation." Further, as the past practice demonstrates, Mr. Patterson has never notified that he should return to after having his treating physician okay his performance of light duty without notification from the Fire Chief. Rather, the undisputed past practice demonstrates that Mr. Patterson has always waited for the Chief to contact him with his expected return to work and his light duty assignment. It is undisputed that Defendants never provided Mr. Patterson with any notice his injury leave in August 2004 would be treated any differently.

Defendants' claim, that the "only significant difference between Patterson and Mard is that Mard was engaged in an independent medical examination while Mr. Patterson was seeing his personal physician," blatantly ignores the fact that this case is about whether Mr. Patterson should have known that his section 111F benefits terminated when his treating physician cleared him to perform light duty. In *Mard*, the purpose of the independent medical examination was to

determine if the employee's medical benefits would be terminated. The issue was not whether

the employee would continue to receive those benefits until he was notified of his return to work.

Here, in contrast, the issue is whether Mr. Patterson's section 111F benefits continued until he

was notified to return to work by the Fire Chief. As the aforementioned past practice

demonstrates, Mr. Patterson had no way of knowing that he was expected to return to work

without first being contacted by the Fire Chief.[2] Defendants claim that Mr. Patterson was

"cleared to return" to his earlier light duty assignment, but there is no evidence that Mr. Patterson

was informed that he was "cleared to return" to his former assignment. Notably, Chief

Tortolano's affidavit contains the bald claim that he only notifies employees of their light duty

assignment when they are on full duty, go out on injury leave, and are then assigned to light

duty, but he does not offer a single example to support this assertion. Nor does Chief Tortolano

offer any evidence that firefighters, including Mr. Patterson, were ever notified of this purported

policy. Indeed, Mr. Patterson's entire prior experience demonstrated that the Fire Chief always

contacted him with his expected date of return and specific light duty assignment. Critically,

Defendants' argument misses the ultimate point – even if Defendants considered this to be the

Fire Department's practice (and nothing in Defendants' submissions supports such a conclusion)

Mr. Patterson was still entitled to notice and hearing prior to the termination of his section 111F

benefits – due process that he was not provided when he visited his treating physician on

September 9, 2004.

---

[2]      Further, the medical evaluation of Dr. Robert R. Pennell, dated October 8, 2003, and attached to
Defendants' opposition as Exhibit 7, is of no relevance to the instant matter and it is presented simply to indirectly
impugn Mr. Patterson's character. That examination occurred almost one year before Mr. Patterson's latest injury
leave in August of 2004 and it bears no relevance to the instant case. Of course, Defendants did not terminate Mr.
Patterson's §111F benefits after receiving Dr. Pennell's letter, a right they understandably chose not to exercise
based on Mr. Patterson's well documented back injury. Finally, Defendants' mud-slinging is incredibly insulting to
Mr. Patterson – a fire fighter who has undergone extensive physical therapy and back surgery, including his most
recent surgery on February 10, 2004, a fusion and decompression at L5-S1, in an effort to alleviate his back pain.

**B.    DEFENDANTS IGNORE THAT MR. PATTERSON'S PROPERTY INTEREST IN HIS CONTINUED EMPLOYMENT ARISES FROM THE CITY'S MUNICIPAL CODE, TITLE 2-32.**

As set forth in Plaintiffs' Memorandum, Mr. Patterson's property interest in his continued employment as a firefighter (and, therefore, his right to a due process pretermination notice and hearing) pursuant to the Woburn Municipal Code, Section 2-32.  Section 2-32 explicitly provides for pretermination notice and hearing prior to dismissal for "inexcusable absence without leave" – the very conduct that the City accuses Mr. Patterson of engaging in.  In that Section 2-32 clearly establishes Mr. Patterson's property right to pretermination notice and hearing and it is undisputed that Mr. Patterson was not provided this due process, Plaintiffs must be granted summary judgment on liability.  See, Plaintiffs' Memorandum, pp. 12-13 and Exhibit F, Coles Affidavit, Ex. 4.

Defendants fail to present any factual or legal reason why the Woburn Municipal Code should not provide Mr. Patterson with this due process property interest.  Instead, Defendants assert that "[t]he existence of the City's Municipal Code provision cited by the plaintiffs does not alter this point nor create any greater rights" (Defendants' Memorandum, p. 13) but fail to provide a shred of evidence to support this conclusory statement.  Instead, Defendants erroneously claim that "Subsection A of the section ("Section 8" at pp. 2-33), "Applicability," specifically *defers* to c. 31 (Civil Service) and its rules regarding suspension, demotion and dismissal, and to any collective bargaining agreements."  Defendants' Memorandum, p. 14.  In fact, Subsection A of Section 2-33 *does not defer to Civil Service rules* in areas where there is not overlap between the local and state laws.  Specifically, nothing in Subsection A suggests that the Municipal Code does not apply in a case where it does not conflict with the Civil Service rules.  And, based on Defendants own argument, there is not conflict here.

6

Subsection A provides in its entirety:

A.    Applicability

The provisions of this section shall apply to all permanent employees provided any employee covered by Civil Service shall be subject to Civil Service rules governing suspension, demotion and dismissal and any employee covered by a collective bargaining agreement shall be subject to the disciplinary procedures of said agreement.

Thus, the Code does not "defer" to Civil Service rules; rather, it makes employees covered by Civil Service subject to both the Municipal Code and the Civil Service rules.  Accordingly, Mr. Patterson retains his right to pretermination notice and hearing under both the Municipal Code and the Civil Service rules.

Further, even if this Court accepts Defendants' argument that the Municipal Code "defers" to the Civil Service rules, the Civil Service rules do not contradict the rights provided by the Code.  Indeed, Defendants own argument is that Mr. Patterson is not provided with pretermination notice and hearing under §38 of the Civil Service rules.  M.G.L. c. 31, §38. Rather, they claim that this section of the civil service rules only provides Mr. Patterson with the right to a letter indicating that he "is considered to have permanently and voluntarily separated himself form the employ" of his employer and the employee may, within ten days, request a hearing as to why he should be "restored" to his position.  Thus, if Defendants are correct (and Plaintiff's strenuously object to such a finding), and the Civil Service rules do not provide for pretermination notice and hearing, then there is no conflict between the City's Municipal Code (which clearly does provide for such notice and hearing) and the Civil Service rules (which Defendants' contend does not provide for such a notice and hearing).  Pursuant to the "Applicability" section of the Municipal Code, Mr. Patterson is subject to both procedures: the

pretermination notice and hearing provided for by the City's Municipal Code *and* the post-termination notice and hearing provided by the Civil Service rules.

**C.    DEFENDANTS ERRONEOUSLY CLAIM THAT MR. PATTERSON IS NOT ENTITLED TO DUE PROCESS PRETERMINATION NOTICE AND HEARING PURSUANT TO THE CIVIL SERVICE RULES.**

Defendants' claim, that Mr. Patterson is not entitled to a due process hearing prior to his termination under M.G.L. c. 31, §38, rests on a fundamental misunderstanding of the law. Contrary to Defendants' claim, Mr. Patterson's right to notice and a hearing prior to the termination of his employment does not depend on whether such a hearing is provided for in M.G.L. c. 31, §38. Rather, his right to such notice and hearing springs from his employment as a fire fighter with the City and his property interest in his continued employment with the City, a property interest secured by the Massachusetts Civil Service statute, M. G.L. c. 31, §43, whereby an aggrieved employee can secure a hearing at the Civil Service Commission to challenge an appointing authority's adverse action for lack of just cause.

The fact that §38 of the Civil Service statute does not explicitly provide for a pre-termination hearing is of no relevance. Many statutes, including §M.G.L. c. 41, §111F, confer property interests that cannot be terminated without prior notice and hearing. The fact that those statutes do not explicitly confer the right to a pretermination hearing is irrelevant. The right to such a hearing springs from the Fourteenth Amendment, rather than the state statute.

Further, Defendants fail to cite to any federal court authority to support their assertion that Mr. Patterson is not entitled to pretermination due process under the Massachusetts Civil Service laws. Instead, they cite to Massachusetts state court cases that do not address the Fourteenth Amendment due process rights at issue in this case. Further, all of the cases relied upon by Defendants predate the seminal Supreme Court case establishing those procedural due

8

process rights, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985), as well as subsequent First Circuit precedent, *Kercado-Melendez v. Aponte-Roque*, 829 F.2d 255, 262 (1st Cir. 1987). Thus, Defendants fail to acknowledge that *Canney v. Municipal Court of City of Boston*, 368 Mass. 648 (1975), concerned only an employee's procedural rights under the Massachusetts civil service laws in effect at the time and did not consider his due process rights under the Fourteenth Amendment of the United States Constitution. In sum, Mr. Patterson's pretermination right to notice and hearing arises under Massachusetts Civil Service law, M.G.L. c. 31, §§41-43.

Finally, Defendants' argument as to the application of M.G.L. c. 31, §38 to the instant matter rests on their disingenuous characterization of Mr. Patterson's termination as a resignation. *See, Sturgess v. Negley*, 761 F. Supp. 1089 (D. Del. 1991). Thus, Defendants assert that Mr. Patterson was on an unauthorized absence but the undisputed facts set forth in Plaintiffs' Memorandum demonstrate unequivocally, Mr. Patterson was neither on an unauthorized absence, nor ever *notified* that he was on an unauthorized absence. Accordingly, Defendants attempt to cast Mr. Patterson's absence as unauthorized and thereby rely on M.G.L. c. 31, §38 is misplaced and only underscores Defendants' unscrupulous conduct toward Mr. Patterson.

## CONCLUSION

For the reasons stated herein and in Plaintiffs' Memorandum, this Court should grant Plaintiffs' motion for summary judgment on liability and deny Defendants' motion for summary judgment.

Respectfully submitted,

STEPHEN PATTERSON and WOBURN
FIRE FIGHTERS ASSOCIATION,
LOCAL 971, I.A.F.F.,
By their attorneys,


Dated:  January 12, 2005                 s/Terence E. Coles
                                         Terence E. Coles, BBO #600084
                                         Pyle, Rome, Lichten, Ehrenberg
                                         & Liss-Riordan, P.C.
                                         18 Tremont St., Ste. 500
                                         Boston, MA 02108
                                         (617) 367-7200