UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN PATTERSON and WOBURN FIRE FIGHTERS ASSOCIATION, LOCAL 971, I.A.F.F.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>PAUL TORTOLANO, Chief of the City of Woburn Fire Department, and CITY OF WOBURN,<br><br>　　　　　　Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*　　Civil Action No. 04-12190-JLT |

MEMORANDUM

March 14, 2005

TAURO, J.

　　Stephen Patterson and the Woburn Fire Fighters Association, Local 971, I.A.F.F. ("Union") brought this action under 42 U.S.C. §§ 1983 and 1988 against the Chief of the Woburn Fire Department and the City of Woburn, Massachusetts. Patterson alleges that Defendants fired him and terminated his injury leave benefits with no pre-deprivation notice or opportunity to be heard in violation of his right to due process of law under the Fourteenth Amendment.

**Background**

　　Plaintiff Stephen Patterson has been a permanent, full-time fire fighter for the Defendant City of Woburn (the "City") since 1980.[1] In 1983, Patterson injured his back while on the job, and, since that time, he has had recurring back problems and has taken a number of injury leaves.

---

[1] The following undisputed facts are drawn from Pls.' Mem. in Supp. of Pls.' Mot. for Summ. J. on Liab. ("Pls.' Mem."), Defs.' Mem. of Law in Opp. to Pls.' Mot. for Summ. J. on Liab. and in Supp. of Defs.' Cross-Mot. for Summ. J. ("Defs.' Mem."), and the evidentiary materials submitted in support.

Recently, Patterson was on injury leave from April of 2003 to July of 2004. In October of 2003, the City sent Patterson to Dr. Robert Pennell for a medical evaluation. Dr. Pennell concluded that Patterson could return to work without restriction. Patterson's own physician, Dr. Frank Pedlow, disagreed. In February of 2004, Dr. Pedlow performed surgery on Patterson's back.

In June of 2004, Dr. Pedlow determined that Patterson could return to limited-duty work. Linda Casale-Luz, a nurse case-manager employed by the City, was present at Patterson's visit with Dr. Pedlow. Ms. Casale-Luz informed the City's Human Resources Department that Patterson had been cleared for limited-duty work. On July 7, 2004, Patterson received a letter from Defendant Fire Chief Paul Tortolano ("Chief Tortolano") assigning him to a limited-duty position. Patterson reported for data entry work, and the City discontinued his injury leave.

Patterson's back pain soon returned. On August 18, 2004, Patterson was forced to take injury leave again. While on injury leave, Patterson continued receiving his pay from the City. On September 9, 2004, Dr. Pedlow examined Patterson and cleared him for limited-duty work. Again, Ms. Casale-Luz was present at Patterson's examination, and she informed the City that Patterson had been cleared for limited-duty employment. Expecting another letter from Chief Tortolano, Patterson waited before returning to work.

On September 25, 2004, with no prior notice or opportunity to explain his absence, the City terminated Patterson's employment and discontinued his injury leave.[2] Patterson was not notified of his termination until September 30, 2004. Patterson's first hearing before the City was held on October 18, 2004. After settlement discussions, the City reinstated Patterson to his

---

[2]Pls.' Mem. at 7. Defendants do not dispute Patterson's assertion that he received no notice or opportunity to be heard prior to the termination of his employment. Defendants simply argue that neither notice nor opportunity to be heard was required by law.

2

limited-duty employment effective November 1, 2004. The City, however, has refused to pay Patterson his salary from September 25, 2004 to November 1, 2004. The parties have filed cross-motions for summary judgment, and the sole issue before this court is whether Defendants deprived Patterson of a property interest without due process of law.

## Discussion

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record reveals that there is "no genuine issue as to any material fact and . . . the moving party [has demonstrated an] entitle[ment] to a judgment as a matter of law."[3] Pursuant to this standard, the "party seeking summary judgment [must] make a preliminary showing that no genuine issue of material fact exists. Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue."[4]

In deciding whether to allow a motion for summary judgment, a court "'must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'"[5] But, a court "need not credit 'conclusory

---

[3] Fed. R. Civ. P. 56(c). "In the lexicon of Rule 56, 'genuine' connotes that the evidence on the point is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party, and 'material' connotes that a contested fact has the potential to alter the outcome of the suit under the governing law if the controversy over it is resolved satisfactorily to the nonmovant." Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996).

[4] Id. (quoting Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995), cert. denied, 515 U.S. 1103 (1995)).

[5] Mullin, 164 F.3d at 698 (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).

allegations, improbable inferences, and unsupported speculation.'"[6]

Of course, "[t]he happenstance that all parties seek summary judgment neither alters the yardstick nor empowers the trial court to resolve authentic disputes anent material facts."[7]  A court considering cross-motions for summary judgment "must evaluate each motion separately, being careful to draw inferences against each movant in turn."[8]  A motion for summary judgment is meant "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."[9]

To succeed on a procedural due process claim under § 1983, Patterson must prove (1) that he had a property interest under state law and (2) that Defendants, acting under color of state law, deprived him of that property interest without following the procedures required by federal constitutional law.[10]

"The hallmark of property," the Supreme Court has explained, "is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'"[11]  What process is "due" before the Government can remove this property depends upon a balancing of three

---

[6]Bloomfield v. Bernardi Automall Trust, 170 F. Supp. 2d 36, 40 (D. Mass. 2001) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

[7]Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

[8]Id.

[9]Mullin v. Raytheon Co., 164 F.3d 696, 698 (1st Cir. 1999) (quoting Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992)).

[10]See PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982)).

[11]Logan, 455 U.S. at 430.

factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[12]

A.   Termination of Patterson's Employment

Section 2-32 of the Woburn Municipal Code provides that a "permanent employee may be demoted or dismissed for just cause."[13] The Code defines "just cause" to include "[i]nexcusable absence without leave" and provides for notice and a hearing prior to termination.[14] It is undisputed that Patterson has been a "permanent employee" of the City of Woburn since 1980.[15] Patterson, therefore, has a "legitimate claim of entitlement" to continued public employment.[16] He has a property interest in his job.

Defendants maintain that they did not "deprive" Patterson of a property interest because he "voluntarily abandoned" his job.[17] Defendants argue that M.G.L. c. 31, § 38 authorizes the City to consider an employee to have "permanently and voluntarily separated himself" from his

---

[12]Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

[13]Aff. of Terence E. Coles Ex. 4.

[14]Id.

[15]Pls.' Mem. at 2; Defs.' Mem. at 2.

[16]Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972); see also Whalen v. Mass. Trial Ct., 397 F.3d 19, 24 (1st Cir. 2005) ("Our court consistently has held that an employee who under state law can be terminated only for 'just cause' has a constitutionally protected property interest in his employment.").

[17]Defs.' Mem. at 10-11.

5

job when the employee has "failed to return for duty without authorization."[18]  According to Defendants, the language of M.G.L. c. 31, § 38 "makes it clear that the Legislature did not contemplate a 'pretermination' proceeding in cases of abandonment."[19]  Defendants' argument must fail because state law does not govern Patterson's basic procedural rights.[20]

While state law governs the creation of property interests, federal constitutional law establishes the conditions and procedures for their deprivation.[21]  The Woburn Municipal Code grants permanent fire fighters a property interest in their continued employment.  Patterson was a permanent Woburn fire fighter.  This court must look, therefore, to federal constitutional law to determine whether Patterson was "deprived" of his property interest.[22]

Under federal law, a truly voluntary resignation is not considered a constitutional "deprivation" of a property interest.[23]  When an employee voluntarily resigns, the public employer

---

[18] Id.

[19] Id. at 11.

[20] Defendants also argue that Patterson does not have a property interest in his continued employment because M.G.L. c. 31, § 38 allows for summary termination.  But this "bitter with the sweet" analysis has been rejected.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985).

[21] See id.; Logan v. Zimmerman Brush Co., 455 U.S. 422, 432 (1982); Vitek v. Jones, 445 U.S. 480, 491 (1980) ("These minimum [procedural] requirements being a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action.").

[22] See Patterson v. Portch, 853 F.2d 1399, 1406 (7th Cir. 1988) (Posner, J.); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167 (4th Cir. 1988) (finding an employee's resignation voluntary and thus not a constitutional "deprivation").

[23] See Walker v. Waltham Hous. Auth., 44 F.3d 1042, 1047 (1st Cir. 1995) (citing Stone, 855 F.2d at 172-75).

need not conduct a hearing or provide pre-termination notice and opportunity to be heard.  But Patterson did not voluntarily quit his job, and Defendants point to no evidence of Patterson's intent to resign from his employment.

Some courts have found that an employee "constructively resigns" when he abandons his employment.[24]  Like a truly voluntary resignation, there are constructive resignations that do not involve the "deprivation" of a property interest in continued public employment.  These circumstances might include, for example, the death of the employee or some very long or unusual absence without leave.[25]

Here, the City terminated Patterson's employment for what it believes was a two-week absence without leave.  It is undisputed that no one from the Woburn Fire Department or the City contacted Patterson about his return to work after Dr. Pedlow cleared him for limited-duty on September 9, 2004.  Patterson had not died, his whereabouts were known, and the City knew that he had been on injury leave since August 18, 2004.  Moreover, Patterson claims that he expected to return to work once he received notice of his limited-duty assignment.  Under the circumstances, Patterson's termination was no different than a discretionary for-cause discharge.  In fact, the Woburn Municipal Code defines "just cause" to include inexcusable absence without

---

[24]See, e.g., State ex rel. Waldman v. Burke, 88 N.E.2d 578 (Ohio 1949); see also Patterson, 853 F.2d at 1406.

[25]See Patterson, 853 F.2d at 1406-1407 (suggesting that death of the employee or defection to the Soviet Union are constructive resignations that are equivalent to voluntary resignations); Dies v. City & County of Denver, 483 P.2d 378 (Colo. 1971) (seven year absence without leave).

leave.[26] Patterson was clearly "deprived" of his property, and the City had to follow the basic procedures required by the Federal Constitution.[27]

Under the Due Process Clause of the Fourteenth Amendment, "[a]s long as substantial post-deprivation process is available, the pre-deprivation process required when terminating an employee often need not be elaborate or extensive."[28] In most situations, the pre-deprivation process "need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story."[29] With a very significant private interest at stake, this simple and inexpensive "initial check against mistaken decisions" is constitutionally required in order to reduce the risk of erroneous deprivations.[30]

When Patterson's livelihood was on the line, he had a constitutional right to invoke the discretion of the City before it committed to a final decision.[31] The City could easily have

---

[26] Aff. of Terence E. Coles Ex. 4.

[27] See Coleman v. Dep't of Pers. Admin., 805 P.2d 300, 309 (Cal. 1991) (explaining that there must be "some meaningful mechanism of procedural protections before the state, as an employer, may treat a permanent or tenured employee's unauthorized absence as a resignation under the AWOL statute"). Moreover, it is axiomatic that "a public employer cannot circumvent its constitutional obligations by recharacterizing an employee's termination as a resignation." Sturgess v. Negley, 761 F. Supp. 1089, 1094 (D. Del. 1991) (quoting Meding v. Hurd, 607 F. Supp. 1088, 1108 (D. Del. 1985)) (internal quotations omitted).

[28] Hudson v. City of Chicago, 374 F.3d 554, 560 (7th Cir. 2004).

[29] Gilbert v. Homar, 520 U.S. 924, 929 (1997) (summarizing the Court's holding in *Loudermill*).

[30] Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545 (1985); see also Goss v. Lopez, 419 U.S. 565, 583-584 (1975) (describing this pre-deprivation process as a "meaningful hedge against erroneous action").

[31] Loudermill, 470 U.S. at 543 ("Even where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke

provided Patterson with notice and an opportunity to tell his side of the story before permanently terminating his employment. Defendants' failure to provide Patterson this pre-deprivation process violated Patterson's right to due process of law. For the foregoing reasons, Plaintiffs' Motion for Summary Judgment on Liability is ALLOWED and Defendants' Cross-Motion for Summary Judgment is DENIED with respect to the termination of Patterson's employment.

B.   Termination of Patterson's Injury Leave Benefits

Patterson also claims that his procedural due process rights were violated when the City terminated his property interest in "leave without loss of pay" as provided by M.G.L. c. 41, § 111F. Section 111F provides,

> Whenever a police officer or fire fighter of a city, town, or fire or water district is incapacitated for duty because of injury sustained in the performance of his duty . . . he shall be granted leave without loss of pay for the period of such incapacity; *provided, that no such leave shall be granted . . . for any period after a physician* designated by the board or officer authorized to appoint police officers or fire fighters in such city, town or district *determines that such incapacity no longer exists*.[32]

The First Circuit has held that a fire fighter receiving pay pursuant to § 111F has a property interest in continued receipt of those benefits.[33] The only dispute, therefore, is whether Defendants afforded Patterson sufficient notice and opportunity to be heard before terminating his § 111F benefits on September 25, 2004.

Patterson received sufficient notice. In June of 2004, Dr. Pedlow determined that

---

the discretion of the decisionmaker is likely to be before the termination takes effect.").

[32] Emphasis added.

[33] Mard v. Town of Amherst, 350 F.3d 184, 189 (1st Cir. 2003) (citing Gaffney v. Silk, 488 F.2d 1248, 1250 (1st Cir. 1973)).

9

Patterson could return to limited-duty work. Thereafter, Patterson began his limited-duty assignment, and the City terminated his injury leave benefits. In August of 2004, Patterson returned to injury leave. On September 9, 2004, Dr. Pedlow again examined Patterson. At this point, Patterson should have been on notice that his doctor could, again, clear him for limited-duty work, which would again result in the termination of his injury leave. On both occasions, the medical evaluations took place in the presence of Ms. Casale-Luz, the nurse case-manager employed by the City. Given his previous experience on injury leave, Patterson had sufficient notice that his injury leave benefits were at stake when Dr. Pedlow examined him on September 9, 2004.

Patterson also received a sufficient pre-deprivation opportunity to be heard. The First Circuit has held that an independent medical examination, when coupled with adequate post-deprivation procedures, is a constitutionally sufficient opportunity to be heard prior to the termination of § 111F benefits.[34] Dr. Pedlow was Patterson's personal physician. As such, Dr. Pedlow's evaluation was a meaningful check against erroneous deprivation. And Patterson does not contest the adequacy of post-deprivation process.

Patterson argues, however, that he did not know his benefits were at stake because Dr. Pedlow was not "designated" by the City to determine whether his incapacity existed. Under M.G.L. c. 41, § 111F, leave without loss of pay is discontinued when a physician *designated* by the City determines that the employee's incapacity no longer exists. But the collective bargaining agreement between the City of Woburn and the Union allows a fire fighter to "elect to be

---

[34] Id. at 192-93.

examined by his/her own physician" in the event that the fire fighter disputes the City's independent medical evaluation.[35]

In October of 2003, the City provided Patterson with the independent assessment of Dr. Robert Pennell.[36] Dr. Pennell found that Patterson could return to work without restriction.[37] As provided by the collective bargaining agreement, Patterson elected to be examined by his personal physician, Dr. Pedlow. The language of M.G.L. c. 41, § 111F and the collective bargaining agreement, combined with Patterson's own past experience, should have put Patterson on notice that his injury leave benefits hinged on Dr. Pedlow's medical evaluation.[38] For the foregoing reasons, Plaintiff's Motion for Summary Judgment on Liability is DENIED and Defendants' Cross-Motion for Summary Judgment is ALLOWED with respect to the termination of Patterson's § 111F benefits.

AN ORDER WILL ISSUE.

/s/ Joseph L. Tauro
United States District Judge

---

[35] Defs.' Mem. Ex. 2 (Article 3, Section 3(2)).

[36] See Defs.' Mem. Ex. 7.

[37] Id.

[38] See Mard, 350 F.3d at 189-91 (explaining that the statute, collective bargaining agreement, and past experience of the employee served to put the employee on notice that the medical examination could lead to termination of § 111F benefits).